LAWRENCE S. BRODSKY, individually )
and as the representative of a class of )
similarly-situated persons, )
                                                )
                                                )     No. 10 C 3233
           Plaintiff, )
                                                  )
        v. )    Judge Thomas M. Durkin
                                                  )
HUMANADENTAL INSURANCE COMPANY )
d/b/a HUMANA SPECIALTY BENEFITS, )
                                                  )
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Lawrense S. Brodsky filed an amended class action complaint[1] against HumanaDental Insurance Company ("HDIC") that included three counts: violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 ("Count I"); common law conversion ("Count II"); and violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/2 ("Count III"). R. 33. HDIC has moved for summary judgment on all three counts. R. 118. For the reasons that follow, the motion is granted as to Counts II and III but denied as to Count I.

## BACKGROUND

Brodsky is a "wholesaler of insurance" who does business as a sole proprietorship known as the Lawrence S. Brodsky Agency, Inc. (the "LSB Agency"). R. 144 ¶ 5. The company was originally called "Brodsky Ingrassia Life

---

[1] The class has not yet been certified. The parties stayed briefing on the motion for class certification pending a decision on the motion at issue here. R. 149.

Organization, Inc. ("Brodsky Ingrassia Life"), but was later changed to the LSB Agency in the late 1980s. R. 156 ¶ 5. HDIC is a Wisconsin corporation that insures certain dental plans, including the HumanaDental Preventative Plus plan, and the HumanaDental PPO and Traditional Preferred plans. *Id.* ¶¶ 6-7. "Humana Specialty Benefits," a group within Humana Inc.,[2] markets "specialty products"— including dental, vision, life insurance, and disability products. *Id.* ¶ 8; R. 144 ¶ 54. HDIC insures dental products under the umbrella of products marketed by Humana Specialty Benefits. R. 144 ¶ 54; R. 156 ¶ 9.

The LSB Agency has "market agreements" with numerous insurance companies. *Id.* Working for Brodsky and the LSB Agency are insurance agents/independent contractors who sell the products of the companies that the LSB Agency represents through those agreements. *Id.* At least seven of the insurance agents—Chris Degen, Tom Dressman, Arno Filerman, Cliff Kirksey, Nick Pettite, Terry Tomaso, and Dave Williams—had permission to use Brodksy's office space and fax machine (assigned the number (847) 991-0152) during the time period at issue, and indeed used the fax machine. *Id.* ¶¶ 31-32. Faxes received by Brodksy's

---

[2] Humana Inc. is an American health care company that has affiliates and subsidiaries that market and administer various health insurance plans. Its website explains the entities' relationship:

> As used in connection with insurance products and services, "Humana" is the brand name for insurance products and services provided by one or more of the Humana group of insurer and health plan subsidiary and affiliate companies (each, a "Humana Ins. Sub."). Insurance products and services are solely and only provided by the one or more Humana Ins. Subs. specified on the insurance policy, not Humana Inc.

*Humana*, https://www.humana.com/, (last visited June 11, 2014).

machine that are addressed to one of his insurance agents "belong[] to" the insurance agent. *Id.* ¶ 33. Brodsky does not consider them to be "his" faxes. *Id.*

Included in Brodksy's agreements with insurance companies is one with "Humana Insurance Company, Humana Health Plan, Inc., and all of their affiliates," known as a "Group Producing Agent or Agency Contract" ("GPA" contract), with an effective date of October 30, 2006 (the "2006 LSB Contract"). R. 146-3. That agreement was signed by Brodsky. *Id.* The 2006 Contract includes a paragraph regarding communication between the parties:

> H. GPA understands and agrees that the Company and GPA through the established business relationship by this agreement may choose to communicate with GPA through the use of mail, email, or facsimile to the address(es) and facsimile number(s) of the GPA. In addition, Company may begin immediately using any changes to such contact information.

R. 144 ¶ 8. "The Company" referred to Humana Insurance Co. and all of its affiliates, *id.* ¶ 7; "GPA" referred to Brodsky or the LSB Agency. The 2006 Contract also contained a paragraph regarding prior contracts:

> E. Prior Contracts superceded. This Contract shall supercede any and all prior contracts other than "Single Case Agreement" for Commission on Group and/or Individual policies or contracts between the parties thereto, whether written or oral, regarding the services of the GPA performed for the Company with respect to such products.

R. 156 ¶ 18. In connection with the 2006 LSB Contract, Brodsky provided his fax number, (847) 991-0152. R. 144 ¶¶ 10-11. There is no dispute that HDIC is an affiliate of Humana Insurance Co. There is also no dispute that the name "Brodsky Ingrassia Life" does not appear in the 2006 LSB Contract. R. 156 ¶ 16.

The insurance agents working for Brodsky also have their own contracts with insurance companies whose products they sell. *Id.* ¶ 28. Brodsky receives overrides on commissions that the insurance agents generate. *Id.* at 29. They do not have written contracts with Brodsky, though Brodsky is often required to sign their contracts with the insurance companies "as the general agent." *Id.*

On June 22, 2003, the LSB Agency entered into a GPA contract with Humana and its affiliates (the "2003 LSB-Degen Contract"), but the contract was signed by Christopher Degen, who was identified as the GPA. *Id.* ¶¶ 10-11. The 2003 LSB-Degen Contract had an identical communication paragraph to the communication paragraph contained in the 2006 LSB Contract, and (847) 991-0152 was provided as the fax number for future correspondence. *Id.* ¶ 13. "Brodsky Ingrassia Life" did not appear anywhere in the contract. R. 156 ¶ 12.

Benefit Marking Services, Inc. ("BMS") entered into the third relevant GPA contract with Humana and its affiliates; it had an effective date of May 5, 2003 (the "2003 BMS Contract"). R. 144 ¶¶ 21-22. The signature of Arno Filerman, who has been associated with Brodsky and the LSB Agency for more than ten years and had permission to send and receive faces on Brodsky's fax machine, was on the 2003 BMS Contract. *Id.* ¶¶ 38-39. Filerman was signing on behalf of and as President of BMS, as he conducted his business through BMS. *Id.* ¶ 38. The contract contained the same communication paragraph as the 2003 LSB-Deger Contract and the 2006 LSB Contract. *Id.* ¶ 23. In conjunction with the contract, BMS provided (847) 272-3828 *and* (847) 991-0152 as its fax numbers. *Id.* ¶ 25.

On May 14, 2008, Brodsky's fax machine assigned to the number (847) 991-0152 received two identical one-page fax messages. R. 156 ¶ 20; R. 33 at 15-16. A copy of the first fax can be seen here:

### Enhance your clients' benefits with dental and vision

## One quote. One application. One enrollment. One bill.

Help your clients choose the dental and vision plan with the level of benefits that's best for their employees at little additional cost. We've made it even easier for them and you to do business with us, providing a single source for a quote, application, enrollment and bill.

**Our portfolio of specialty benefits products now include:**

> Cost-effective DHMO products that focus on preventive care:
  - No waiting periods
  - No annual maximum
  - No claims to file
  - Available for your clients with two or more employees, or 10 or more if they want to include orthodontic coverage

> Advantage Plus dental plans:
  - Use the HumanaDental Advantage Plus Network
  - Members can see any dentists in the network
  - Adult and child orthodontia included in most plans
  - Available to groups with as few as 10 enrolled, or two enrolled if orthodontia is not included

> HumanaVision VCP options:
  - Have multiple copayments and allowances
  - Available to groups with 10 or more enrolled employees; with 2 – 9 enrolled employees when sold with a Humana medical or dental plan

Sell HumanaDental and HumanaVision plans and earn credits towards Humana's Leaders Club trip to Maui in 2009.

Materials to help you promote the new product offerings include:
- Flyer to share with clients or prospects (form number: GN-51517-FY)
- Dental brochure
- Vision brochure

To order log in to the secured agent section of Humana.com. Select "Marketing & Products," then "Dental, vision and life."

Call your Humana Specialty Benefits sales executive for details.

## HUMANA.
*Specialty Benefits*

If you don't want us to contact you by fax, please call 1-800-U-CAN-ASK.

GN-FAX 4/08

5

R. 33 at 15. The first fax has a received timestamp of "5/14/2008 8:48:21 PM," *Id.*; the second says "5/14/2008 8:48:42 PM." *Id.* at 16. The bottom of the faxes demonstrates that they were sent by "Humana Specialty Benefits." *Id.* at 15-16. There is no dispute that the faxes were sent to (847) 991-0152, but the faxes themselves do not list the number they were sent to or to what individual or entity to which they were sent. R. 144 ¶ 48; R. 156 ¶ 23. The fax was created by the Marketing Department of Humana Inc. R. 144 ¶ 42. A spreadsheet from the Marketing Department, which it received from the Information Management Group (also a division of Humana Inc.), that was produced during discovery contains the names and fax numbers of the "producing agents and agencies" that received a copy of the fax sent to Brodsky's fax machine. R. 144 ¶ 47; *see, e.g.*, R. 122-14 at 14. An unredacted portion of the spreadsheet reveals that one fax was sent to "BENEFIT MARKETING SERVICE," at (847) 991-0152, and a second fax was sent to "BRODSKY INGRASSIA LIFE OR," also at (847) 991-0152. R. 122-14 at 14.

Brosky claims that approximately six to eight weeks before his fax machine received the two faxes on May 14, 2008, he called a telephone number listed on a previous Humana fax that he had received. R. 156 ¶ 21. He claims to have spoken to a female representative of "Humana" and asked that his fax number, (847) 991-0152, be removed from Humana's fax advertising broadcast list. *Id.* According to Brodsky, "[t]he woman at Humana laughed, said it's only a fax, and then said they would take care of it." *Id.*

After receiving the two faxes on May 14, 2008, Brodsky filed a class action lawsuit in July 2008 in the Circuit Court of McHenry Count, Illinois, against Humana. R. 22 at 2. He alleged that Humana Inc. transmitted unsolicited fax advertisements to Brodsky and other class members without consent and absent an established business relationship, which was a violation of the TCPA and the ICFA, and committed the tort of common law conversion. *Id.* That suit was removed to the Northern District of Illinois on August 25, 2008. Brodsky later admitted that he did not have a claim against Humana Inc. and sought to amend his complaint in order to substitute HDIC as the defendant. *Id.* at 3. The magistrate judge denied Brodsky's motion, and the district court dismissed the case because of Brodsky's admission that he did not have a claim against Humana deprived the court of subject matter jurisdiction. *Id.*

Brodksy subsequently initiated this class action suit against HDIC in the Circuit Court of Cook County, Illinois, in March 2010. R. 1. HDIC removed the case to the Northern District of Illinois on May 26, 2010, *id.*, where the case was assigned to then-Chief Judge James F. Holderman. Brodsky filed his amended complaint on August 5, 2011, which included three counts. R. 33. HDIC filed an amended motion for summary judgment on December 12, 2012, R. 118, which the parties were briefing when the case was transferred to the undersigned Judge on January 14, 2013. R. 134.

## LEGAL STANDARD

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the non-moving party must produce more than a "mere scintilla of evidence," meaning "evidence on which [a] jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In ruling on the motion, the Court considers the entire evidentiary record and "view[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party." *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013); *Egan Marine Corp. v. Great Am. Ins. Co.*, 665 F.3d 800, 811 (7th Cir. 2011).

## ANALYSIS

HDIC contends that it is entitled to summary judgment because the case is barred by the doctrine of res judicata and, alternatively, because Brodsky has not put forth sufficient evidence to demonstrate there is a genuine issue of material fact as to any of the three counts in his amended complaint. The Court addresses the arguments in turn.

## I.  Res Judicata

HDIC argues for the third time in this case that the doctrine of res judicata bars Brodsky's claims against it. R. 120 at 19-22. "Under res judicata, a final

judgment on the merits bars further claims by the parties or their privies based on the same cause of action." *Ross v. Bd. of Educ.*, 486 F.3d 279, 282 (7th Cir. 2007) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). A party attempting to utilize the doctrine must establish: "(1) identity of the claim, (2) identity of parties, which includes those in 'privity' with the original parties, and (3) a final judgment on the merits." *Id.* at 283.

The Court need not provide a full recitation of the procedural history HDIC relies on in support of its argument, as the Court has already discussed it on two prior occasions. R. 22 at 8-10; R. 32. In short, Brodsky originally sued Humana Inc. in 2008 (Case No. 08 C 50188), but Judge Philip G. Reinhard dismissed the case "for lack of subject matter jurisdiction" after the magistrate judge denied Brodsky's leave to amend his complaint to add HDIC as a defendant, Case No. 08 C. 50188, R. 72, and Brodsky admitted that he had no claim against Humana Inc. *Id.*, R. 83. This suit followed.

In previously rejecting HDIC's res judicata argument, the Court focused its attention on the third element—i.e., whether the dismissal in the 2008 case was on the merits. R. 22 at 8-10; R. 32. Since this Court's latest rejection of the argument, the Seventh Circuit decided *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555 (7th Cir. 2011), a case in which the court concluded that a dismissal in the district court for lack of jurisdiction was in actuality a dismissal on the merits. In *Joseph*, the plaintiff sued Elan Corp. instead of the company he should have sued, Elan Inc. *Id.* at 557. The plaintiff later moved to amend his complaint to add Elan

9

Inc., as a defendant, but the district judge denied that motion because he did not believe that the amended complaint would relate back, so for statute of limitations purposes, the claim against Elan Inc. was untimely and, thus, the amendment would have been futile. *Id.* at 557-58. Accordingly, because the plaintiff did not have a claim against Elan Corp, which he admitted, and there were no other claims in the case, the court dismissed the case as a whole for lack of subject matter jurisdiction. *Id.*

On appeal, though not central to its holding, the Seventh Circuit explained:

> The judge should have allowed the amendment [adding Elan Inc. as a defendant,] and then, believing that the amended complaint did not relate back, should have rendered judgment on the merits for both defendants—for Elan Corp., the original defendant because it had not broken any contract . . . , and for Elan Inc., added as a defendant by the amendment, because the statute of limitations for a suit against it based on the contract had expired.

*Id.* at 558-59. So procedurally, the dismissal was really on the merits, rather than for lack of jurisdiction as was used in the dismissal order. *See id.* at 559.

HDIC contends that the same situation is present here: (1) Brosky's motion for leave to add HDIC as a defendant was denied; (2) Brodsky admitted that he did not have a claim against Humana; and (3) Brodsky's case was dismissed for lack of jurisdiction, though it was really "on the merits." This argument is flawed. Based on the reasoning in *Joseph*, the Court's focus is on the denial of Brodsky's motion to substitute HDIC as a defendant and the reasons for the magistrate judge's denial of that motion, *not* why the complaint against Humana was dismissed. (Brodsky admitted the case was dismissed because he did not have a claim against Humana.

Case No. 08 C 50188, R. 83.) Here, HDIC has not put forth any evidence that the magistrate judge denied Brodsky's motion to amend because the claim against HDIC would have been futile, like the claim against the new defendant in *Joseph* because of the statute of limitations. To the contrary, the magistrate judge denied the motion to amend because of the procedural posture of the case, the fact there was a pending motion to dismiss and a pending motion for summary judgment, and because the judge believed it would be more difficult to substitute parties than for Brodsky to simply file a new suit. Case No. 08 C 50188, R. 77-3. The judge stated, "[C]ounsel, he'll go down the hall and file the lawsuit. All I've done is cost them 350 bucks." *Id.* at 4:7-8. Based on this, HDIC cannot meet its burden of demonstrating that the dismissal in Case No. 08 C 50188 should have been on the merits.

This conclusion is further bolstered by the fact that Judge Reinhard stated the following when dismissing the case:

> As the Magistrate Judge observed on the record when he denied plaintiff's motion to substitute a new defendant, plaintiff's proper course of action would be to file a new action against the new defendant [HDIC].

Case No. 08 C 50188, R. 83. If this case was akin to the situation in *Joseph* where (1) the claims against the new defendant were barred or would ultimately fail, and (2) the plaintiff was prohibited from adding the new defendant for that reason, then neither the magistrate judge nor Judge Reinhard would have *explicitly* stated that Brodsky's "proper course of action" was to file a new action against HDIC or dismissed the case "without prejudice." *See id.*, R. 84. The dismissal in Case No. 08 C 50188 did not "wrap[] up the case in a way that indicates [Brodsky] irrevocably

11

failed," *see Am. Nat'l Bank & Trust Co. v. Chi.*, 826 F.2d 1547, 1553 (7th Cir. 1987), and thus, it cannot be considered a dismissal "on the merits." HDIC's res judicata argument fails.

## II.  Count I

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless the unsolicited advertisement is from a sender with an established business relationship with the recipient." 47 U.S.C. § 227(b)(1)(C). An individual may bring a private right of action under the TCPA, § 227(b)(3), "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or both." The individual may receive treble damages if the Court finds the defendant violated the TCPA "willfully or knowingly." § 227(b)(3). A cause of action for a violation of § 227(b)(1)(C) requires the plaintiff to establish that (1) the defendant used a telephone facsimile machine, a computer, or other devise to send one or more faxes to the plaintiff's facsimile machine; (2) the faxes sent were "advertisements"; and (3) the plaintiff did not give prior express invitation or permission for defendant to send the faxes. *Creative Montessori Learning Ctr. v. Ashford Gear, LLC*, No. 09 C 3963, 2014 WL 865963, at *3 (N.D. Ill. Mar. 3, 2014).

HDIC argues that it is entitled to summary judgment on Brodsky's TCPA claim because there is no genuine issue of material fact that it was not a "sender," as defined in 47 C.F.R. § 64.1200(f)(10); the fax was not an "advertisement," as

defined in 47 U.S.C. § 227(a)(5); and in any event, it had Brodsky's permission to send a fax to the number at issue and the fax was not sent to Brodsky. Brodsky claims he has put forth sufficient information that, if true, could support each of the elements to prove a TCPA claim. Furthermore, citing *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013), Brodsky claims that the third element is irrelevant because the opt-out notice on the fax was insufficient.

### A. HDIC Could Be a "Sender"

HDIC contends it did not "use" a fax machine to "send" a fax to "anyone." R. 130 at 7. The issue of who or what qualifies as a "sender" under the TCPA is not quite as simple as HDIC would have it seem (or prefer). The FCC regulations define "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. 64.1200(f)(10). Brodsky does not dispute that the Marketing Department of Humana Inc. was the actual sender of the fax. R. 142 at 7-8. The Court's focus must shift to the phrases "on whose behalf" a fax was sent *and* "whose goods or services are advertised or promoted" in the fax. As other courts in this District have noted, "defendants cannot escape liability simply by hiring an independent contractor to send unsolicited facsimiles on their behalf." *Creative Montessori Learning Ctr.*, 2014 WL 865963, at *3 (quoting *Bridgeview Health Care Ctr. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *4 (N.D. Ill. Mar. 19, 2013)). The TCPA "creates a form of vicarious liability making an entity liable when a third

party sends unsolicited communications on its behalf in violation of the Act."
*Bridgeview Health Care Ctr.*, 2013 WL 1154206, at *4.

The parties agree that on or about March 17, 2008, Melanie Buehler, a Humana Insurance Company employee, directed staff in the Marketing Department of Humana Inc. to create what it now calls a "producer communication." R. 144 ¶ 42. She was not an employee of HDIC. *Id.* The fax says "Humana Specialty Benefits" in large letters on the bottom of the fax, implying that it is the sender. *See* R. 33 at 15-16. There is no dispute that "Humana Specialty Benefits" is a marketing umbrella for Humana "specialty products," including dental, vision, and life insurance and disability products. R. 156 ¶ 8. That would seemingly include HDIC's products. R. 156 ¶ 9 ("HDIC admits that some of its products fall under the Humana Specialty Benefits umbrella."). HDIC attempts to diminish the significance of the "marketing umbrella" and its relevance to the issue of whose products are advertised in the fax by arguing that the three products specifically listed on the fax—Dental HMO ("DHMO"), Advantage Plus dental plan, and HumanaVision VCP options—were not insured by HDIC. *See* R. 144 ¶¶ 50-53. While that may be true, there is a question of fact as to whether the fax could be interpreted as (1) *only* promoting or offering information as to those three products, or (2) listing those products as examples and really promoting *any* product related to the Humana Specialty Brand, which would include HDIC's products. A reasonable inference in favor of Brodsky is the latter because the fax says "Our *portfolio* of specialty benefits products now include[s]." R. 33 at 15-16 (emphasis added). A jury could conclude that it was not an exclusive or

exhaustive list of Humana products being promoted. If a jury believes the latter to be true, HDIC would qualify as a "sender" for purposes of the TCPA.

In addition to what the fax says on its face, Brodsky has directed the Court to other evidence that supports the latter inference. HDIC admits that Humana Inc. does the advertising and marketing for HDIC products. R. 156 ¶ 42. If Humana always does the marketing and advertising for HDIC, it is more than reasonable to infer that Humana was doing it with regard to these faxes as well. Further, George Burleton, a Director at HDIC, testified that the purpose of the fax was to "promote products that are underneath the Human Specialty Benefits marketing umbrella." *Id.* ¶ 38. Again, both sides agree HDIC products fall under the umbrella. R. 156 ¶ 9. Finally, HDIC produced certain dental brochures that seem to indicate that there is a closer relationship between HumanaDental and HDIC than HDIC admits. *See* R. 130 at 6 (describing the relationship between Humana Dental, HumanaDental Advantage Plus, and HDIC). The covers of the dental brochure state the following:

> We're happy you are considering HumanaDental plans. You'll find our products are easy to choose and use, and our passion for service is simply part of who we are. You can be confident that you and your employees will be well taken care of.
>
> We invite you to take a few minutes to learn more about our company, and how we can benefit your business.
>
> ~ We're one of the nation's 10 largest dental companies.
>
> ~ A.M. Best rates **HumanaDental Insurance Company** as "excellent."
>
> ~ Our national **PPO dental network** has more than 106,000 dentist locations.
>
> \*   \*   \*
>
> (Fla. Dent. Br., HD 69); (Ala. Dent. Br., HD 91); (Ind. Dent. Br., HD 113);

(Ill. Dent. Br., HD 135); (Oh. Dent. Br., HD 157); (Mo. Dent. Br., HD 179);
(Tenn. Dent. Br., HD 201); (Ky. Dent. Br., HD 223); (Kan. Dent. Br., HD 245); (Ga. Dent. Br., HD 267); (Tx. Dent. Br., HD 289) (emphasis added).

R. 156 ¶ 50. If "HumanaDental" plans were promoted or described in some type of communication where HDIC was explicitly listed as an insuring company, it is at least plausible that the Marketing Department was also trying to promote HDIC products in the faxes at issue here.

In short, Brodsky has provided sufficient evidence to demonstrate that there is a genuine issue of material fact as to whether HDIC qualifies as a "sender" under the TCPA.

## B. The Fax Could Be an "Advertisement"

An "advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5). HDIC argues that the faxes were not "advertisements" as defined in the statute and, in support, cites a number of cases concluding that certain faxes at issue were not "advertisements" under the TCPA. *See* R. 130 at 9-12 (discussing *Phillip Long Dang, P.C. v. XLHealth Corp.*, No. 1:09-CV-1076-RWS, 2011 WL 553826 (N.D. Ga. Feb. 7, 2011); *Holmes v. Back Doctors, Ltd.*, No. 09-540-GPM, 2009 WL 3425961 (S.D. Ill. Oct. 21, 2009); *Phillips Randolf Enterprises, LLC v. Adler-Weiner Res. Chi., Inc.*, 526 F. Supp. 2d 851 (N.D. Ill. 2007); *Ameriguard, Inc. v. Univ. of Kansas Med. Cntr. Res. Institute, Inc.*, No. 06-0369-CV-W-ODS, 2006 WL 1766812 (W.D. Mo. June 23, 2006)). This argument fails.

16

HDIC carefully refers to the faxes as a "producer communication," an "informational communication," and an "informational producer communication," but how HDIC chooses to refer to the faxes is not relevant to the question of whether the faxes were "advertisements." Courts confronted with this issue have looked to the precise information included in the fax, such as descriptions of the availability or quality of products. *See Green v. Time Ins. Co.*, 629 F. Supp. 2d 834, 837 (N.D. Ill. 2009). The faxes at issue here explicitly state, "Our portfolio of specialty benefits products now include[s]," and then discusses certain products and the advantages and conveniences of them. R. 33 at 15-16. Furthermore, courts have said that "[t]he TCPA does not require that an unwanted and uninvited fax make an overt sales pitch," *Green*, 629 F. Supp. 2d at 837 (citing *Stone Crafters, Inc. v. Almo Distrib. N.Y. Inc.*, No. 07-5105, slip op. at 2 (N.D. Ill. July 23, 2008); *Sadowski v. OCO Biomedical, Inc.*, No. 08-3225, 2008 WL 5082992, at *3 (N.D. Ill. Nov. 25, 2008)). However, a jury could find that the faxes contained a sales pitch. For example, the faxes provide, "We've made it even easier for them and you *to do business with us*, providing a single source for a quote, application, enrollment and bill," and, "Sell HumanaDental and HumanaVision plans and *earn credits towards Humana's Leaders Club trip to Maui in 2009*." R. 33 at 15-16 (emphasis added). These are open invitations to do business with Humana, not merely the promotion of research studies or trials. *Cf. Phillips Randolph Enter., LLC*, 526 F. Supp. 2d at 853; *Ameriguard*, 2006 WL 1766812, at *1. This information alone, in conjunction

with the way the fax was laid out and designed, could lead a jury to conclude the fax was an "advertisement" under the TCPA.

It is true that the faxes provide some general information to the recipient, and HDIC says they were created to "educate brokers and agents of Humana companies concerning products that they were authorized to market to their own customers." R. 144 ¶ 44. It also may be true that the faxes were "targeted information pieces directed to agents under contract." R. 130 at 12. But that is not dispositive. Most advertisements are targeted to a select group of consumers or individuals. In sum, a common sense reading of the faxes demonstrates there is at least a genuine issue of material as to whether they are "advertisements" under the TCPA.

### C. Brodsky has Standing

In order to bring a cause of action, a plaintiff must have standing, an essential element of which is that a plaintiff sustained an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Injury in fact" has been defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id.* (internal citations omitted). HDIC argues that Brodsky lacks standing because the faxes were sent to Benefit Marketing Services and Brodsky Ingrassia Life, both of whom HDIC contends it had permission to send faxes. HDIC contends the faxes were not sent to Brodsky, so Brodsky did not suffer an "injury in fact" and, thus, cannot proceed with a private cause of action. In response, Brodsky argues, first, that the

faxes must have been sent to him because it was his fax machine and number and, second, that he suffered an injury because he owned the fax machine, paid the telephone bills for the fax machine, and paid for its paper and toner. R. 142 at 10.

It is undisputed that the faxes themselves do not list the name of a person or entity to whom they were sent. R. 144 ¶ 48; R. 156 ¶ 23. It is also undisputed that the unredacted portion of the spreadsheet listing the numbers to which the faxes were sent list Brodsky's number, with the recipients being "BENEFIT MARKETING SERVICE" and "BRODSKY INGRASSIA LIFE OR." R. 122-14 at 14. That does not necessarily preclude a finding of liability under the TCPA in favor of Brodksy, however. As other courts have noted, if that was the case, a "sender" of a fax could avoid liability by sending it to "John Doe" or some other generalized individual or entity. *See, e.g., All Am. Painting, LLC v. Fin. Solutions & Assocs.*, 315 S.W.3d 719, 724 (Mo. 2010) ("[I]f the Court were to accept Financial Solutions' argument that the name at the top of the header controls who has a cause of action under the TCPA, advertisers could circumvent the act and avoid liability completely by simply addressing every advertisement to 'John Doe.'"); *Physicians Healthsource Inc., v. Cephalon, Inc.*, No. 12-cv-3753, at 6 (E.D. Pa. Jan. 25, 2013) (unpublished) (stating the same (quoting *All Am. Painting, LLC*, 315 S.W.3d at 724)). That result would be in direct contrast to the purpose of the TCPA, which is "to prevent the shifting of advertising costs to recipients of unsolicited fax advertisements." *Phillips v. Randolph Enters., LLC v. Adler-Weiner Research Chi., Inc.*, 526 F. Supp. 2d 851, 852 (N.D. Ill. 2007).

There is a genuine issue of material fact as to whom the faxes were sent. A jury will need to consider the relationship between (1) Brodsky, the LSB Agency, and Brodsky's insurance agents—mainly, Degen who signed the 2003 LSB-Degen Contract, and Filerman who signed the 2003 BMS Contract; (2) Brodsky, the LSB Agency, and Humana and its affiliates through the 2006 LSB Contract; and (3) Brodksy's insurance agents and Humana and its affiliates, and the contracts they signed. The jury will also need to consider whether Brodsky's alleged call to Humana affected to whom Humana sent the faxes,[4] and the significance of the fact that the second fax was sent to Brodsky Ingrassia Life, the initial name of (and the same corporate entity as) what is now known as the LSB Agency, R. 144 ¶ 14. This is important because Brodsky cannot claim that he personally suffered the injury required to establish a violation of the TCPA if the jury determines the faxes were *not* sent to Brodsky, but rather, to Filerman through BMS, Degen, or some other agent, and the person had explicit permission from Brodsky to the use the fax machine. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) ("In order to establish a case or controversy, the party invoking federal jurisdiction must demonstrate '*a personal injury* fairly traceable to the defendant's

---

[4] HDIC argues that the phone call Brodsky claims to have made to Humana or its representatives revoking his "consent" is inadmissible and cannot be considered on summary judgment. R. 160 at 10-11. The Court disagrees, as Brodsky has at this stage satisfied the requirements of Rule 901 of the Federal Rules of Evidence for the call to be admissible. The deficiency of certain information surrounding the call, which HDIC highlights in its brief, R. 160 at 10-11, goes to the weight of the evidence not its admissibility.

allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984))) (emphasis added).

Moreover, as the Court will explain in Section II.D., if Brodsky is able to satisfy all of the elements for Count I regardless of whether HDIC had consent to send a fax to Brodsky's number, *someone* may recover based on HDIC's admission that the opt-out notice was deficient as a matter of law. *See* R. 156 ¶ 24. Congress, however, could not have intended for numerous people who used or owned a given fax machine or fax number to recover statutory damages resulting from the same fax. So, the only person who may recover on either fax at issue here is the person to whom the fax was sent. If the jury determines the faxes were not sent to Brodsky, he will be unable to recover anything on Count I because he admits that faxes sent to his insurance agents belong to those agents, not him. *See* R. 144 ¶ 33.

### D. "Prior Express Invitation or Permission" is Irrelevant if the Required Opt-Out Notice is Insufficient as a Matter of Law

Under the TCPA, the opt-out requirements for a fax advertisement are as follows: (1) the notice must be "clear and conspicuous and on the first page of the advertisement"; (2) the notice must state "that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under [47 C.F.R. 64.12000(a)(4)(v)] is unlawful"; (3) the notice provides either a domestic contact telephone number and facsimile machine to make the aforementioned request or a "separate cost-free mechanism . . . to transmit a request pursuant to such notice to the sender of the

advertisement" any time, "24 hours a day, 7 days a week." 47 C.F.R. § 64.1200(a)(4)(iii)(D)-(E); *see Nack v. Walburg*, 715 F.3d 680, 683 (8th Cir. 2013) (citing 47 U.S.C. § 227(b)). HDIC admits that the faxes do not contain "language that states the failure to respond to an opt-out request within 30 days is unlawful." R. 156 ¶ 24. This is an admission that the notice provided in the faxes sent to Brodsky's fax machine was deficient as a matter of law and will be binding on HDIC should the case go to trial.

HDIC argues that the opt-out notice language, and its corresponding admission that the notice was deficient, is irrelevant because it had Brodsky's consent to send a fax to his fax machine. The parties thus spend considerable time describing facts that they claim demonstrate whether or not HDIC had Brodsky's "prior express invitation or permission, in writing or otherwise," *see* 47 U.S.C. § 227(a)(5), to send Brodsky's fax machine (as opposed to Brodsky himself) a fax. This dispute is not surprising given that 47 U.S.C. § 227(b)(1)(c) provides for a fax to be actionable under the TCPA only when it is "unsolicited."

However, since the parties briefed HDIC's motion, the Eighth Circuit decided the case *Nack v. Walburg*, rendering their dispute over Brodsky's consent irrelevant. *See* 715 F.3d at 682. *Nack* was the first federal court of appeals to hold that even if a sender has received prior express consent to send another party a fax, the party may nevertheless pursue a private cause of action against the sender if the fax does not comply with the opt-out notice requirements provided in 47 C.F.R. 64.1200(a)(4)(iii). *See Nack*, 715 F.3d at 685. The court explained:

22

Setting aside any concerns regarding the validity of 47 C.F.R. § 64.1200(a)(3)(iv) or the scope of the private right of action, we believe that the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax. This plain-language interpretation of the regulation is consistent with the FCC's proffered interpretation of its own regulation and is largely consistent with [*In re Rules & Regulations Implementing the TCPA of 1991*, Junk Fax Prevention Act of 2005, 21 FCC Rcd 3787, 3812 (2006), 2006 WL 901720 (F.C.C.)] . . . . In this circumstance, we must defer to the FCC's plain-language interpretation of its own regulation unless the regulation is "contrary to unambiguous statutory language" or "application of the regulation [is] arbitrary or capricious." *Ballanger v. Johanns*, 495 F.3d 866, 872 (8th Cir. 2007)

Given the procedural posture of the present case, these two exceptions provide no basis for our court to reject the FCC's proffered interpretation.

*Id.* (second alteration in *Nack*). While the decision is not binding on this Court, that court's reasoning and analysis is persuasive, and this Court will follow it. Accordingly, because Brodsky argues that the opt-out language provided in the two faxes received on May 14, 2008, was insufficient as a matter of law, the Court need not determine as a matter of law whether HDIC had consent to send faxes to (847) 991-0152 or whether Brodsky legally revoked that consent when he allegedly called Humana six to eight weeks before May 14, 2008. HDIC can be liable for the faxes regardless of whether it had Brodsky's consent, provided it sent the faxes to *him*. *See generally Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *7 (N.D. Ill. Sept. 24, 2013) ("The sufficiency of the opt-out language in Quill's faxed advertisement is a relevant issue for discovery regardless of whether the recipient consented to receive the fax or whether the recipient had an [established business relationship] with Quill.").

III.   Count II

Brodsky alleges that HDIC "improperly and unlawfully converted [his] fax machine[], toner, paper, and employee time [for] its own use. R. 33 ¶ 33. "To prove conversion, a plaintiff must establish that '(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.'" *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008) (quoting *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)).

HDIC sets forth a number of reasons why Brodsky's conversion claim in Count II should fail, including that the claim is barred by the doctrine of *de minimis non curat lex*, which means "the law doesn't concern itself with trifles." *Brandt v. Bd. of Educ. of Chi.*, 480 F.3d 460, 465 (7th Cir. 2007); *see also Mitchell v. JCG Indus.*, 745 F.3d 837, 841 (7th Cir. 2014) (explaining that "the punchier version [of *de minimis no curat lex*] is *aquila non capit muscas*—an eagle doesn't catch flies"). Brodsky did not respond to any of HDIC's arguments, *see* R. 142; R. 166, so the claim could be considered abandoned like Count III, as discussed below. *See De v. City of Chi.*, 912 F. Supp. 2d 709, 733-34 (N.D. Ill. 2012). But even so, the Court agrees with HDIC's *de minimis* argument.

In this Court's ruling on HDIC's motion to dismiss, *Brodsky v. HumanaDental Insurance Co.*, No. 10 C 3233, 2011 WL 529302, at *7 (N.D. Ill. Feb. 8, 2011), the Court held that Brodsky had sufficiently alleged a claim for conversion

24

because, *at that stage*, it could not determine the significance of Brodsky's alleged damages. Brodsky has since been deposed, however, and in his deposition, Brodsky admitted that "[t]here is no indication of a specific actual cost to be reimbursed" for the two faxes at issue here. R. 144 ¶ 59. Accordingly, because Brodsky may not combine his loss with any members of the (possible) putative class, *see Bunting v. Progressive Corp.*, 809 N.E.2d 225, 231 (Ill. App. Ct. 1st Dist. 2004), even assuming Brodsky is able to establish all of the required elements, at most, Brodsky would only be entitled to the cost of two sheets of paper and maybe pennies for toner. This is precisely the type of damage claim that the *de minimis* doctrine is intended to bar.[5] *See, e.g., Mitchell*, 745 F.3d at 841-43; *G.M. sign, Inc. v. Elm Street Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 769 (N.D. Ill. 2012); *Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's, Inc.*, No. 11 C 6959, 2012 WL 638765, at *2-4 (N.D. Ill. Feb. 23, 2012); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08 C 5959, 2010 WL 276701, at *2-3 (N.D. Ill. Jan. 15, 2010). Brodsky's conversion claim in Count II fails as a matter of law.

## IV.    Count III

A claim for a violation of the ICFA requires a plaintiff to satisfy the following elements: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course

---

[5] Other courts in this District have cited then-Chief Judge Holderman's ruling in this case on HDIC's motion to dismiss as authority for the proposition that the *de minimis* doctrine should not apply to fax claims under the TCPA. *See Old Town Pizza*, 2012 WL 638765, at *3. That overstates the ruling, as the Court only concluded that Brodsky's allegations were sufficient to survive HDIC's motion to dismiss.

of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Aliano v. Ferriss*, 988 N.E.2d 168, 176 (Ill. App. Ct. 1st Dist. 2013). HDIC argues that it is entitled to summary judgment on Brodsky's ICFA claim because Brodsky cannot satisfy the elements. Brodsky did not respond to HDIC's argument in his response briefs, let alone mention his ICFA claim. *See* R. 142; R. 166. There is a "well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered" and present its arguments to the Court. *Reklau v. Merch. Nat'l Corp.*, 808 F.2d 628, 630 n.4 (7th Cir. 1986); *see De*, 912 F. Supp. 2d at 733. It is not the district court's job to "scour the record in search of evidence to defeat the [summary judgment] motion," *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); if there is a genuine issue of material fact that precludes summary judgment, "the court can rely upon the *non-moving party* to show such a dispute if one exists." *L.S. Health & Son v. At & T Info. Sys.*, 9 F.3d 561, 567 (7th Cir. 1993) (emphasis added). Brodsky has said nothing, and his silence necessarily implies that either there is no genuine issue of material fact to preclude summary judgment on the claim, or he has chosen to abandon the claim. Whatever the reason for Brodsky's reticence, his failure to develop any argument in opposition to HDIC's motion requires a finding that Brodsky has waived his ICFA claim in Count III.

## CONCLUSION

HDIC's motion for summary judgment, R. 118, is denied as to Count I but granted as to Counts II and III. Counts II and III are therefore dismissed. A status hearing is set for June 19, 2014 at 9:00 a.m. to discuss the next steps in this dated case.

ENTERED:

_Thomas M. Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: June 12, 2014