LAWRENCE S. BRODSKY, individually )
and as the representative of a class of )
similarly-situated persons, )
                                 )      No. 10 C 3233
          Plaintiff, )
                                 )
          v. )     Judge Thomas M. Durkin
                                 )
HUMANADENTAL INSURANCE COMPANY )
d/b/a HUMANA SPECIALTY BENEFITS, )
                                 )
          Defendant. )

**MEMORANDUM OPINION AND ORDER**

Lawrense S. Brodsky filed an amended class action complaint[1] against HumanaDental Insurance Company ("HDIC") that included three counts: violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 ("Count I"); common law conversion ("Count II"); and violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/2 ("Count III"). R. 33. HDIC moved for summary judgment on all three counts. R. 118. On June 12, 2014, the Court granted summary judgment in favor of HDIC as to Counts II and III but denied its motion as to Count I. R. 189; *Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 WL 2780089 (N.D. Ill. June 12, 2014). HDIC has filed two motions in response to the Court's order—a motion for reconsideration, R. 199, and a motion to

---

[1] The class has not yet been certified. The parties stayed briefing on the motion for class certification pending a decision on the motion for summary judgment. R. 149.

certify the issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the following reasons, the Court denies both motions.

## BACKGROUND

The Court previously provided a detailed background of the facts of this case, s*ee Brodsky*, 2014 WL 2780089, at *1-3, and thus presumes familiarity with the background for purposes of this ruling. In short, HDIC sent two identical one-page faxes on May 14, 2008, to Brodsky's fax machine that was assigned to the number (847) 991-0152. There is no dispute that the faxes were sent to (847) 991-0152, but the faxes themselves do not list the number they were sent to or to what individual or entity they were sent. Brodsky's suit is based on those two faxes.

HDIC advanced a number of arguments as to why it was entitled to summary judgment in its favor. As relevant here, HDIC argued that Brodsky lacked standing to pursue the claims and that he could not demonstrate that the faxes were "sent to" him. HDIC also argued that the faxes it sent were not "advertisements," as defined in 47 U.S.C. § 227(a)(5). Finally, HDIC argued that it had Brodsky's consent to send the faxes, so it could not be held liable under the TCPA. The Court rejected each of HDIC's arguments and concluded that there are issues of fact best resolved by a jury. *See id.* at *4-11.

## ANALYSIS

### I.      Motion for Reconsideration

A party is only entitled to relief in a motion to reconsider if he can establish "a manifest error of law or fact or present newly discovered evidence." *Vesely v.*

*Armslist LLC*, ___ F.3d ___, No. 13-3505, 2014 WL 3907114, at *3 (7th Cir. Aug. 12, 2014) (quoting *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011)). "'A manifest error' is not demonstrated by the disappointment of the losing party"; instead, it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). A motion to reconsider may also be appropriate if there has been a "controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). HDIC has resurrected the arguments it made on summary judgment to support its contention that the Court made a manifest error of law in its original ruling—mainly, (1) that the faxes were not advertisements; and (2) that HDIC did not send the fax to Brodsky, so he lacks standing.

## A. The Fax Could be an "Advertisement"

HDIC directs the Court to a District of Massachusetts case, *Physicians Healthsource, Inc. v. MultiPlan Services Corp.*, No. 12-11693-GAO, 2013 WL 5299134 (D. Mass. Sept. 18, 2013), that was decided after briefing on the motion for summary judgment concluded but before this Court decided the motion, to argue that the law has significantly changed as to whether the faxes at issue here were advertisements. In *Physicians Healthsource v. MultiPlan Services*, the court concluded that the fax could not be an advertisement, reasoning that there was not "any enticement that could be construed as a pretext to advertise commercial

3

products or services because the facsimile [was] merely apprising [the doctor] of features of an account to which he already has access." *Id.* at *2. In ruling on the summary judgment motion, the Court considered *all* of the relevant cases decided before its ruling on June 12, 2014. *Physicians Healthsource v. MultiPlan Services* was a case decided prior to the Court's ruling, regardless of whether the parties included it in their briefs. Furthermore, if the case was as influential as HDIC now attempts to show, HDIC could have easily highlighted the case after briefing had ceased by providing it to the Court as supplemental authority. It did not. And in any event, this Court is not bound by an isolated case from the District of Massachusetts,[2] which renders HDIC's argument that the law has changed *since its ruling*, let alone "significantly changed," even less cogent. HDIC's argument fails.

### B. Brodsky Has Standing

HDIC argues that the Court improperly determined that there was an issue of material fact on the question of standing, contending the Court made a decision "'outside the adversarial issues presented to the court by the parties,'" *Bank of Waunakee*, 906 F.2d at 1191, by making (what it contends was) a decision that "Benefit Marketing Services or Brodsky Ingrassia Life were acting *as agents for plaintiff* Lawrence S. Brodsky (an individual and sole proprietor)[.]" R. 200 at 9. HDIC alternatively argues that the Court misinterpreted the facts of record in determining that there was a question of fact on the issue. *Id.* at 9-10.

---

[2] The fax at issue in this case and its particular language are different from the fax in *Physicians Healthsource v. MultiPlan Services*, so the cases can be distinguished on that ground alone.

The Court disagrees with both of HDIC's arguments. *HDIC* moved for summary judgment—not Brodsky. In doing so, it put at issue whether the faxes were sent to Brodsky. The Court was well within its discretion to consider the parties' arguments before the Court and the logical corollaries resulting from them, even if the language the Court used in reaching its conclusion did not explicitly track the particular language the parties used regarding a given argument. Brodsky provided evidence establishing that he is a sole proprietor, which as Brodsky points out in his response to the motion for reconsideration, R. 207 at 10, "is not a legal entity, but merely a name under which the owner, *who is the real party in interest,* does business." *Jeroski v. Fed. Mine Safety & Health Review Comm'n*, 697 F.3d 651, 652 (7th Cir. 2012) (emphasis added). Accordingly, any fax that is sent to the Lawrence S. Brodsky Agency, Inc. (the "LSB Agency"), in essence, invokes the rights of Brodsky. Despite HDIC's arguments to the contrary, there is an inference in this case that in sending the fax to Brodsky Ingrassia Life, HDIC had actually intended to send the fax to what is now the LSB Agency, sole proprietor—and thus, Brodsky himself. This is true regardless of the particular recipient's name listed in HDIC's files or whether the 2006 LSB Contract could supersede the 2003 LSB-Degen Contract.[3] Relevant considerations are those the Court pointed out in its prior order. *See Brodsky*, 2014 WL 2780089, at * 8. In any event, the Court's ruling on the issue was well within the bounds of the parties' arguments.

---

[3] For consistency, the Court refers to the two contracts at issue, the 2003 LSB-Degen Contract and the 2006 LSB Contract, as it did in its prior order.

That determination aside, the parties' briefs bring about an additional issue that the Court must address. Both sides discuss the case *Chapman v. Wagener Equities, Inc.*, in which Seventh Circuit explained,

> [N]o monetary loss need be shown to entitle the junk-fax recipient to statutory damages. Whether or not the user of the fax machine is an owner, he may be annoyed, distracted, or otherwise inconvenienced if his use of the machine is interrupted by unsolicited faxes to it, or if the machine wears out prematurely because of overuse attributable to junk faxes. . . . Anyway it would be arbitrary to limit relief under the junk-fax provision of the [TCPA] to owners of fax machines, and there is no suggestion of such a limitation in the statute.

747 F.3d 489, 491 (7th Cir. 2014). Highlighted here is the fact that Brodsky *is* the owner of the fax machine. From the language in *Chapman*, it is possible that Brodsky, as the owner of the fax machine, can recover for *any* fax that is sent to his machine—regardless of whether others had consent to use it. *See id.* at 492 ("At most the defendants' argument would support adding to the class the owners, if different from the users, of the fax machines that received the unauthorized fax advertisements."). If that is true, the Court's prior statement that Brodsky could not claim that he "personally suffered the injury" if the fax was not sent to him, *see Brodsky*, 2014 WL 2780089, at *8, is incorrect. The language in *Chapman* would indicate that Congress, through its passing of the TCPA, conferred standing upon individuals like Brodsky—i.e., owners of a fax machine—in cases like this to file suit for violations of the TCPA.

It is indisputable that a fax machine owner should not be able to "manufacture" purported violations of the TCPA. In reaching its decision on standing, the Court previously explained, "Congress . . . could not have intended for

numerous people who used or owned a given fax machine or fax number to recover statutory damages resulting from the same fax." *Id.* at \*9. However, the Court failed to acknowledge that the "the TCPA sets statutory damages at $500 for 'each such violation,' not per person." *Spine & Sports Chiropractic, Inc. v. Zirmed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421, at \*19 (W.D. Ken. June 30, 2014); *see St. Louis Heart Ctr., Inc. v. Vein Ctrs. For Excellence, Inc.*, No. 4:12 CV 174 CDP, 2013 WL 6498245, at \*5 (E.D. Mo. Dec. 11, 2013) ("Vein Centers worries that, by using the proposed definition, it might end up being liable to multiple parties for each fax it sent. Although conceivable, such a result would not increase Vein Centers' overall liability. The TCPA sets statutory damages at between $500 and $1500 *per violation*, not per person." (citing 47 U.S.C. § 227(b)(3))) (emphasis in *St. Louis Heart Ctr.*). This renders meaningless HDIC's argument that "plaintiff allowed hundreds of producers to use his fax machine." R. 210 at 5.[4] If anything, the fact others had explicit permission to use Brodsky's machine simply means Brodsky may have to split his share of any damage recovery.[5] In light of this information, the Court is reconsidering part of its decision.

---

[4] HDIC likens the situation here to a Fed Ex Office where Fed Ex would have a claim for faxes sent to its customers. *See* R. 210 at 6 n.7. Because a defendant's overall liability on a given violation of the statute would not change based on the number of parties able to recover on that violation, this argument fails, as it did in *St. Louis Heart Center*, 2013 WL 6498245, at \*5.

[5] The Court is cognizant that none of those individuals who had permission to use his fax machine are currently plaintiffs in this case.

In *Chapman,* the fax sent to the machine was "unauthorized," or sent without the receiver's consent, regardless of the person to whom it was sent. There was but one TCPA violation, and the effect of the single violation on both the fax machine owner and the fax machine user was identical. The same is true here, regardless of whether the faxes were sent to Brodsky or one of the seven agents who had permission to use his machine. In essence, everyone who used the machine received two faxes that did not comport with the statutory opt-out language requirements. Assuming the faxes are "advertisements," all the individuals experienced the same effect of two violations of the statute—be it inconvenience, distraction, or otherwise. Thus, there does not appear to be any reason in this case to limit recovery on a given violation to only the person to whom the fax was sent.[6] That none of the cases Brodsky cites have held that "purported ownership of the fax machine *automatically* confers standing as a matter of law," as HDIC argues, R. 210 at 4 (emphasis added), is immaterial. The decisions in other cases and the purpose of the TCPA statute and regulations, coupled with the facts of this case, demonstrate that standing here is appropriate. HDIC further contends that "[n]one of the cases by plaintiff hold that the owner of a fax machine has standing to bring a TCPA claim *when he has given permission to numerous others to use the machine, and where the faxes indeed were sent to other users* according to Humana's uncontradicted business records, as in the

---

[6] This fact is brought to the forefront of the discussion because Brodsky Ingrassia Life is no longer even an active entity—it is now the LSB Agency, which is not a legal entity. If one of the faxes was truly sent to "Brodsky Ingrassia Life," according to HDIC's position, it would seem as if no one could recover for a statutory violation resulting from that fax.

instant case." *Id.* at 4 (emphasis in original). But when the issue of consent is removed from the equation, as the Court previously held was the case, it makes no difference to whom the fax was sent. Accordingly, the Court reconsiders its prior conclusion that Brodsky cannot recover unless the fax was "sent" to him. *See Brodsky*, 2014 WL 2780089, at \*8-9. It is undisputed here that the faxes were sent to (847) 991-0152, which was assigned to Brodsky's fax machine. In light of *Chapman*, that confers standing on Brodsky to bring his TCPA claim in this case.[7]

## II.     Motion to Certify

Motions for interlocutory appeal are governed by 28 U.S.C. § 1292(b), which provides:

> When a district court judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

A district court follows "four statutory criteria" in determining whether a Section 1292(b) petition should be granted: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). "Unless *all* these criteria are satisfied, the district

---

[7] HDIC contends in its reply brief that "Brodsky is asking this Court to reconsider its determination that, on the current state of the record, Brodsky's asserted ownership of the fax machine does not mean he automatically has standing to pursue a TCPA claim." R. 210 at 2. By challenging the issue of standing and the Court's prior ruling, *HDIC* put at issue whether the Court's standing decision in its entirety was valid. HDIC also had a full and adequate opportunity in its reply brief to address all of Brodsky's arguments on the issue.

court may not and should not certify its order to [the Seventh Circuit] for an immediate appeal under section 1292(b)." *Id.* (emphasis in original). The Court must also be conscious of the fact that "[i]nterlocutory appeals are frowned on in the federal judicial system." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). The disfavor towards interlocutory appeals arises from the fact they "interrupt litigation and by interrupting delay its conclusion; and often the issue presented by such an appeal would have become academic by the end of the litigation in the district court, making an interlocutory appeal a gratuitous burden on the court of appeals and the parties, as well as a gratuitous interruption and retardant of the district court proceedings." *Id.*

In its prior ruling, the Court concluded that HDIC may be liable for sending a fax that does not comply with the opt-out notice requirements in 47 C.F.R. 64.1200(a)(4)(iii)(D)-(E) even if HDIC had Brodsky's consent to send the fax. (Brodsky maintains that HDIC did not have consent.) The Court rejected HDIC's argument that it was not liable under the TCPA for insufficient opt-out language if it had the recipient's permission to send the fax.

## A.    Questions for Certification

HDIC seeks certification of this Court's prior ruling in denying HDIC's summary judgment motion on two questions of law:

1.    Whether 47 C.F.R. § 64.1200(a)(4), construed as a whole, applies to faxes sent with the permission of the recipient (or "solicited faxes"); and

2.    Whether a private right of action exists under 47 U.S.C. § 227(b) for the transmission of a fax sent with the permission of the

recipient, where the fax does not contain the specific opt-out language set forth in 47 C.F.R. § 64.1200(a)(4)(iii).

R. 202 at 6, 9.

## B. The Questions to be Certified are Not "Contestable"

HDIC's motion for certification fails because HDIC cannot demonstrate a "contestable" question of law.[8] This determination is based on a number of considerations. First, as Brodsky points out, the language in 47 C.F.R. § 64.1200(a)(4)(iv) is unequivocal: "A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the send must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii)." It does not in any way contain an exception based on consent. The FCC has also set forth its position on the regulation, as well as its ability to promulgate the regulation, both in *In re Junk Fax Prevention Act of 2005*, CG Docket No. 05-338, (May 2, 2012) and in its amicus brief to the U.S. Court of Appeals for the Eighth Circuit in *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013), *cert denied* 134 S. Ct. 1539 (Mar. 24, 2014). *See* R. 208-1; R. 208-2. In short, the FCC's position is that

---

[8] HDIC is able to satisfy three of the elements required for certification: (1) there is a question of law; (2) the question is controlling; and (3) a resolution of the issue might speed up the litigation. Indeed, the legal question of whether the TCPA applies to faxes sent with the permission of a party is directly relevant to this case because, as the Court previously noted, HDIC admits that the language in the faxes *did not* comport with the statutory requirements. *See Brodsky*, 2014 WL 2780089, at *9. If the case were to go to trial, the parties would not be required to address the issue of consent. Should HDIC appeal any decision at the conclusion of the case, and the Seventh Circuit disagree with the Court's ruling, substantial additional litigation may result. The issue of class certification and Brodsky's ability to serve as a class representative—with some members possibly having given consent and others not—would also be of concern.

(1) it had the ability to promulgate the regulation, and (2) the required opt-out notice language is required even if there was consent.[9] And as the Supreme Court has explained, courts should "defer to [the FCC's] views," even if advanced as *amicus curiae*.[10] *Talk Am., Inc. v. Mich. Bell Tel. Co.*, ___ U.S. ___, 131 S. Ct. 2554, 2261, 2265 (2011).

Moreover, the Eighth Circuit has addressed both questions in *Nack*. The court in *Nack* held that the regulation applies to all faxes, including those sent with the recipient's permission, and that the proper procedure for challenging the regulation is through the FCC's administrative procedures. *See Nack*, 715 F.3d at 685-87. This Court has already concluded that the *Nack* court's reasoning was persuasive. *Brodsky*, 2014 WL 2780089, at *10. Another circuit's decision is not binding on this Court, *see Nicaj v. Shoe Carnival, Inc.*, No. 13 C 7793, 2014 WL 184772, at *2-3 (N.D. Ill. Jan. 16, 2014), *aff'd Redman v. Radioshack Corp.*, ___ F.3d ___, Nos. 14-1470, 14-1471, 14-1658, 14-1320, 2014 WL 4654477 (7th Cir. Sept. 19, 2014), so the simple fact that the Eighth Circuit interpreted the statute and

_____

[9] HDIC contends in its reply brief that the FCC's "pronouncements from time to time have not been consistent." R. 211 at 2. The Court does not find persuasive the evidence HDIC sets forth in support of that argument or even that different "pronouncements" by the FCC over the years would mean that the question before the Court is "contestable." It is indisputable that the FCC "confirmed its interpretation of its regulation" in *Nack* and "explained that the regulation reached faxes for which the recipient had granted consent." *See Nack*, 715 F.3d at 684.

[10] The Court disagrees with HDIC's argument that the FCC's interpretation is "plainly erroneous" and not entitled to deference, as the district court in *Nack* concluded. *See* R. 211 at 4. The district court's opinion in *Nack* was reversed. *See Nack*, No. 4:10 CV 00478, 2011 WL 310249, at *4-6 (E.D. Mo. Jan. 28, 2011), *rev'd and remanded* 715 F.3d 680, *cert denied* 134 S. Ct. 1539.

regulations a certain way—and this Court agrees with that interpretation—does not in and of itself demonstrate the question is not "contestable." However, numerous other courts have followed *Nack*'s interpretation of the statute and regulations, including one in the Northern District of Illinois. *See, e.g., C-Mart, Inc. v. Metro. Life Ins. Co.*, No. 13-80561-CIV, 299 F.R.D. 679, 688 (S.D. Fla. Feb. 4, 2014) (explaining that "voluntary consent does not eliminate the TCPA's opt-out notice requirement"); *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at \*7 (N.D. Ill. Sept. 24, 2013) ("The sufficiency of the opt-out language in [the defendant's] faxed advertisements is a relevant issue for discovery regardless of whether the recipient consented to receive the fax or whether the recipient had an [established business relationship] with [the defendant].").

Furthermore, the Seventh Circuit essentially endorsed the *Nack* court's interpretation of the statute in dicta:

> Even when the [TCPA] permits fax ads—as it does to persons who have consented to receive them, or to those who have established business relations with the sender—the fax must tell the recipient how to stop receiving future messages. 47 U.S.C. § 227(b)(1)(C)(iii), (2)(D). [The defendant's] faxes did not contain opt-out language information, so if they are properly understood as advertising then they violate the Act *whether or not the recipients were among* [*the defendant's*] *clients*.
>
> \* \* \*
>
> Because Top of Mind omitted opt-out notices, *it does not matter which recipients consented or had an established relationship with* [*the defendant*].

*IRA Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 683-84 (7th Cir. 2013) (emphases added). HDIC is correct that the Seventh Circuit has not "squarely" addressed the specific questions on which HDIC seeks an interlocutory appeal. R.

202 at 7. But the *Holtzman* court's statements concerning the regulations at issue in this case—which seemingly implicate (1) whether the opt-out notice is necessary when the sender has the recipient's consent, and (2) who has a private right of action—are unambiguous. Other courts outside this circuit have also followed *Holtzman* in concluding that "even advertisements sent with consent/permission must include an opt-out notice that complies with the applicable requirements." *Spine & Sports Chiropractic, Inc.*, 2014 WL 2946421, at *19; *see also In re Sandusky Wellness Ctr., LLC*, 570 Fed. Appx. 437, 437-38 (6th Cir. 2014) ("The district court, however, failed to consider whether the facsimiles transmitted by the defendants contained opt-out notices or whether those opt-out notices were adequate. If the opt-out notices were absent or inadequate, commonality might be present." (citing *Holtzman*, 728 F.3d at 684)). The language in *Holtzman* is sufficiently clear to demonstrate the Seventh Circuit would likely answer the questions before this Court in the same way as the Court in *Nack* did.

Finally, the Court has considered the broad spectrum of other courts across the country that have dealt with similar TCPA issues involving opt-out notices and the issue of consent. In light of *Nack*, the outcome determinative issue before courts no longer seems to involve the first question that HDIC asks this Court to certify—i.e., whether the regulations apply to faxes sent with the receiving party's consent. Rather, the issue is whether the FCC had the *authority* to regulate solicited faxes pursuant to Section 227(b) and whether a private right of action flows from a violation of those regulations (HDIC's second question for certification), which the

court in *Nack* said it could not decide. *See Nack*, 715 F.3d at 686-87 ("We hold . . . that the Hobbs Act generally precludes our court from holding the contested regulation invalid outside the statutory procedure mandated by Congress. . . . We do not believe that, in this circumstance, it is possible of prudent for our court to resolve [the private right of action] issue without the benefit of full participation by the [FCC].") As HDIC acknowledges in its reply brief, a challenge on these grounds assumes—though without conceding the point—that the FCC's regulations apply to both solicited and unsolicited faxes. R. 211 at 6.

The FCC has taken the position that it acted pursuant to the authority given to it by Congress. But since the *Nack* decision, numerous petitions have been made to the FCC seeking a declaratory ruling as to the scope of its rulemaking authority regarding the requirement of opt-out notices in unsolicited *and* solicited advertisements. At least three courts have commented that the FCC lacked the authority to promulgate a regulation providing individuals who gave consent with a private right of action under the TCPA, though each court ultimately stayed the case pending resolution of the administrative proceedings. *See Kaye v. Merck & Co., Inc.*, No. 3:10-cv-1546 (RNC), 2014 WL 2002447, at *2 (D. Conn. May 15, 2014) ("I am inclined to agree with the defendants that the FCC lacks authority to regulate solicited faxes [pursuant to Section 227(b) of the TCPA] and am not entirely persuaded by the Eighth Circuit's conclusion that the Hobbs Act bars me from reaching this conclusion[.]" (quoting *Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, No. 3:12-CV-1208 (SRU), 2014 WL 518992, at *3 (D. Conn. Feb. 3,

2014))); *Raitport v. Harbour Capital Corp.*, No. 09-cv-156-SM, 2013 WL 4883765, at *1 (D.N.H. Sept. 12, 2013) ("Congress surely intended to protect citizens from the impositions associated with unwanted, unwelcome, 'unsolicited' facsimile advertisements, but likely did not think it necessary to protect citizens from 'solicited' facsimile advertisements—ones they invited and affirmatively wished to receive."). Although, another court in addressing a motion for class certification went the other way, deducing that the FCC *did* have the authority to promulgate the regulations. *See Spine & Sports Chiropractic, Inc.*, 2014 WL 2946421, at *19 (explaining that it disagreed with the defendant's argument that the FCC "was without authority to expand TCPA liability").

This discussion leads to two important conclusions. First, there is not a "substantial ground for difference of opinion" as to the first question HDIC asks the Court to certify. The predominant view, taking into consideration the Eighth Circuit's decision in *Nack* and the Seventh Circuit's remarks in *Holtzman*, is that 47 C.F.R. § 64.1200(a)(4), construed as a whole, *does* apply to faxes sent with the permission of the recipient. Second, as the *Nack* court held, any direct or indirect challenge to the FCC's authority to promulgate the regulations or to whether a private right of action exists, at this time, should be through the FCC's administrative processes.[11] Indeed, there are currently pending proceedings on the

---

[11] Even those courts commenting that they disagree with *Nack's* ultimate decision regarding the Hobbs Act have not made a decision on the merits as to whether the regulation is within the scope of authority given to the FCC under the TCPA. They have simply stayed the case pending the outcome of the pending FCC

issue before the FCC. *See Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, 2014 WL 518992, at \*3. HDIC has not provided the Court with any basis for concluding that it is "contestable" that the proper challenge to the regulations is through administrative remedies. That being the case, the Court does not believe the second question is suitable for interlocutory appeal either.

## CONCLUSION

No adequate basis exists to grant either the motion for reconsideration or the motion to certify. Thus, both motions, R. 199, R. 201, are denied, subject to the Court's modification of its prior ruling—i.e., Brodsky, as the fax machine's owner, is *not* required to prove the faxes were sent to him as it is undisputed that he owns the fax machine that received the two faxes. The status hearing set for September 30, 2014, at 9:00 a.m. remains, at which time the parties should be prepared to discuss how the case should progress and whether a stay is appropriate in light of the ongoing administrative proceedings on the relevant TCPA issues.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated:  September 29, 2014

---

administrative procedures. *See Kaye*, 2014 WL 2002447, at \*3 n.2; *Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, 2014 WL 518992, at \*3.