# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LAWRENCE S. BRODSKY, individually and as the representative of a class of similarly-situated persons, | Case No. 1:10-cv-03233 |
| | Judge John Robert Blakey |
| Plaintiff, | |
| v. | |
| HUMANADENTAL INSURANCE COMPANY d/b/a HUMANA SPECIALITY BENEFITS, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lawrence Brodsky ("Plaintiff" or "Brodsky") filed this putative class action against Defendant HumanaDental Insurance Company ("Defendant" or "HDIC") after receiving two messages on his fax machine. Plaintiff argues that these faxes represented improper advertisements in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* Currently pending before the Court are Plaintiff's Motion For Class Certification [290], Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction Under FRCP 12(b)(1) [323], and Defendant's Motion For Leave To File Eighth and Ninth Affirmative Defenses To The Amended Complaint [281]. As explained below, Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction Under FRCP 12(b)(1) [323] is denied, Defendant's Motion For Leave To File Eighth and Ninth Affirmative

Defenses To The Amended Complaint [281] is denied as moot, and Plaintiff's Motion For Class Certification [290] is granted in part and denied in part,.

## I.  Legal Standard

When analyzing Defendant's motion to dismiss, the Court must construe the Amended Complaint [32] in the light most favorable to Plaintiff, accept as true all well-pleaded facts and draw reasonable inferences in his favor. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). To survive Defendant's motion, the Plaintiff must competently prove by a preponderance of the evidence that subject matter jurisdiction exists. *NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995). The Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation omitted).

To obtain class certification, Plaintiff must satisfy the four Rule 23(a) requirements—numerosity, commonality, typicality and adequacy of representation—and one subsection of Rule 23(b). *See Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). Here, Plaintiff moves to certify a class under Rule 23(b)(3), so he must show: (1) that issues common to the class members predominate over questions affecting only individual members; and (2) that a class action is superior to other available adjudication methods. *See Messner v. Northshore University HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Plaintiff bears the burden of

proving each Rule 23 requirement by a preponderance of the evidence. *Id.* Failure to satisfy any requirement precludes class certification. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

This Court has broad discretion to determine whether to certify a class. In exercising its discretion, this Court does not presume that all well-pleaded allegations are true and can look "beneath the surface" of the Amended Complaint [32] to conduct the inquiries required by Rule 23. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001). Although a determination regarding class certification should not turn upon the likelihood of success on the merits, this Court must make the factual and legal inquiries necessary to ensure that the class certification requirements are satisfied, even if that implicates some overlap with the merits of the case. *Messner*, 669 F.3d at 823-24; *American Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010).

## II.    Background[1]

### A.    Factual History

Plaintiff Brodsky is a "wholesaler of insurance" who does business as a sole proprietorship known as the Lawrence S. Brodsky Agency, Inc. (the "LSB Agency"). Defendant HDIC is a Wisconsin corporation that insures certain dental plans, including the HumanaDental Prevention Plus plan, the HumanaDental PPO and Traditional Preferred Plans. "Humana Specialty Benefits," a group within Humana

---

[1] Unless otherwise indicated, these facts are taken from Judge Durkin's earlier ruling on HDIC's motion for summary judgment [189].

Inc., markets "specialty products," including dental, vision, life insurance and disability products.

Brodsky and the LSB Agency have "market agreements" with numerous insurance companies. Brodsky then sells the products of those insurance companies through various insurance agents/independent contractors. One of Brodsky's market agreements was with "Humana Insurance Company, Humana Health Plan, Inc., and all of their affiliates." That agreement is known as a "Group Producing Agent or Agency Contract." This Agency Contract stipulated that Brodsky and the LSB Agency agreed that Humana Insurance Co. and all of its affiliates "may choose to communicate with [Brodsky and/or the LSB Agency] through the use of . . . facsimile to the . . . facsimile numbers of" Brodsky and the LSB Agency. In connection with his Agency Contract, Brodsky provided Humana Insurance Co. with a specific facsimile number ending in 0152.

On May 14, 2008, Brodsky's fax machine assigned to the 0152 number received two identical one-page fax messages ("the Subject Faxes"). The bottom of the Subject Faxes indicated that they were sent by "Humana Specialty Benefits." There is no dispute that the Subject Faxes were created by the Marketing Department of Humana Inc., and received the internal designation GN-Fax 4/08. The Subject Faxes do not identify the individual or entity to which they were specifically sent. At least seven of Brodsky's insurance agents/independent contractors had permission to use (and did in fact use) Brodsky's office space and fax machine during the time period at issue. The parties have stipulated that faxes

identical to the Subject Faxes (similarly designated GN-Fax 4/08) were successfully transmitted 19,931 times. [285] Ex. 21, ¶ 20.

## B. Procedural Posture

Plaintiff initiated the present litigation in state court against HDIC. [1] Ex. A at 1. HDIC, in turn, removed the litigation to this Court. *Id.* HDIC first moved to dismiss on the basis that its prior offers of full relief to Plaintiff rendered the litigation moot. [14] at 2-3. That motion was denied. [21] at 1. HDIC then moved for summary judgment, arguing, *inter alia*, that HDIC did not "send" the Subject Faxes, the Subject Faxes were not "sent" to Plaintiff, the Subject Faxes were not "advertisements," and Plaintiff had consented to delivery of the Subject Faxes. [118] at 1-5. Defendant's motion for summary judgment was denied as to Plaintiff's TCPA claim. [189] at 12-23. HDIC moved for reconsideration of that ruling [199], which was denied. [212] at 3-9. In the course of ruling on both HDIC's motion for summary judgment and motion for reconsideration, Judge Durkin ultimately determined, *inter alia*, that:

> (1) Whether the Subject Faxes were "advertisements" within the meaning of the TCPA is a disputed factual question, [189] at 16-18;
>
> (2) Whether HDIC was a "sender" of the Subject Faxes within the meaning of the TCPA is a disputed factual question, [189] at 13-16;
>
> (3) Brodsky has standing to pursue a TCPA claim based on the Subject Faxes, even if they were intended for independent contractors with whom he associated, as "it makes no difference to whom the [Subject Faxes were] sent," [212] at 9; and

> (4) The opt-out notices on the Subject Faxes were deficient as a matter of law, thereby precluding Defendant from raising defenses sounding in "express prior invitation" or "established business relationship." [189] at 21-23.

On March 23, 2016, HDIC deposited $25,000 in an escrow account with U.S. Bank, N.A. [323] ¶¶ 4-6. Under the escrow agreement, upon entry of a final order from this Court, U.S. Bank, N.A. is directed to pay the escrow funds to the Plaintiff. *Id.* In connection with the tender and deposit of funds into the escrow account, HDIC has also agreed, in written correspondence with Plaintiff, to refrain from sending any faxes to Plaintiff in the future. *Id.*

## III. Analysis

Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction Under FRCP 12(b)(1) [323] and Defendant's Motion For Leave To File Eighth and Ninth Affirmative Defenses To The Amended Complaint [281] contest Plaintiff's standing in light of HDIC's creation of the escrow account. Given the potentially dispositive nature of this question, the Court addresses these motions first.

### A. Defendant's Motion to Dismiss

Defendant claims that by placing in escrow an amount equal to or greater than Plaintiff's potential individual recovery, it has mooted any putative "claim or controversy" and thereby deprived Plaintiff of standing. Defendant's argument misconstrues governing precedent, and is therefore rejected.

### 1. *Campbell-Ewald* Requires A "Fair Opportunity" To Litigate Class Claims

The Supreme Court of the United States recently had occasion to address Article III standing under similar circumstances in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). The plaintiff in *Campbell-Ewald* filed a putative class action complaint pursuant to the TCPA. *Id.* at 667. Defendant in that case proposed to settle plaintiff's individual claim through a FRCP 68 offer of judgment and parallel settlement offer. *Id.* at 667-68. After plaintiff rejected those offers, the defendant moved to dismiss pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction. *Id.* at 668. More specifically, the defendant argued that no "case or controversy" existed insofar as plaintiff had been offered complete relief. *Id.*

The Court rejected defendant's "pick off" attempt. The Court stated that a case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party," and that "as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* at 669 (internal quotation omitted). An unaccepted settlement offer simply has "no force," and like other unaccepted contract offers "creates no lasting right or obligation." *Id.* at 666. The Court further observed that, given "the defendant's continuing denial of liability, adversity between the parties persists." *Id.*

The majority in *Campbell-Ewald* also explicitly "adopt[ed] Justice Kagan's analysis" in *Genesis Healthcare Corporation v. Symczyk*, 133 S. Ct. 1523 (2013). In that case Justice Kagan, writing in dissent, explained:

> Nor does a court have inherent authority to enter an unwanted judgment for Smith on her individual claim, in service of wiping out her proposed collective action. To be sure, a court has discretion to halt a lawsuit when the defendant unconditionally surrenders and only the plaintiff's obstinacy or madness prevents her from accepting total victory. But the court may not take that tack when the supposed capitulation in fact fails to give the plaintiff all the law authorizes and she has sought. And a judgment satisfying an individual claim does not give a plaintiff like Smith, exercising her right to sue on behalf of other employees, "all that [she] has . . . requested in the complaint (*i.e.*, relief for the class)." *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 341 (1980) (Rehnquist, J., concurring). No more in a collective class action brought under the FSLA than in any other class action may a court, prior to certification, eliminate the entire suit by acceding to a defendant's proposal to make only the named plaintiff whole. That course would short-circuit a collective action before it could begin, and thereby frustrate Congress's decision to give FLSA plaintiffs "the opportunity to proceed collectively." *Hoffmann-LaRoche*, 493 U.S., at 170, 110 S. Ct. 482; *see Roper*, 445 U.S., at 339, 100 S. Ct. 1166. It is our plaintiff Smith's choice, and not the defendant's or the court's, whether satisfaction of her individual claim, without redress of her viable classwide allegations, is sufficient to bring the lawsuit to an end.

*Symczyk*, 133 S. Ct. at 1536 (Kagan, J., dissenting). Ultimately, *Campbell-Ewald* stands for the proposition that, notwithstanding a defendant's individual settlement attempts, "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that [class] certification is warranted." *Campbell-Ewald Co.*, 136 S. Ct. at 672.

## 2. *Campbell-Ewald*'s Remaining Hypothetical

The majority in *Campbell-Ewald* stated, in dicta, that it did not "now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount," as that "question is appropriately reserved for a case in which it is not hypothetical." *Id.* at 672. Unsurprisingly,

TCPA defendants across the country have endeavored to test the limits of *Campbell-Ewald* by making this hypothetical a reality. Federal courts faced with this situation have reached divergent conclusions. *Compare South Orange Chiropractic Center, LLC v. Cayan LLC*, No. 15-13069, 2016 WL 1441791, at *5 (D. Mass. Apr. 12, 2016) (holding the named plaintiff's individual TCPA claims were moot "because Defendant has offered to deposit a check with the court, to satisfy all of Plaintiff's individual claims (and more), and to have the district court enter judgment in Plaintiff's favor") *and Price v. Berman's Automotive, Inc.*, No. 14-763, 2016 WL 1089417, at *3 (D. Md. Mar. 21, 2016) (issuance of unconditional cashier's check with proof of payment and delivery to plaintiff would moot plaintiff's claim); *and Leyse v. Lifetime Entertainment* Services*, LLC*, —— F. Supp. 3d ——, 2016 WL 1253607, at *2 (Mar. 17, 2016) (a "defendant's deposit of a full settlement with the court, and consent to entry of judgment against it, will eliminate the live controversy before a court") *with Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1146 (9th Cir. 2016) (defendant's attempt to "invoke the hypothetical question reserved in *Campbell-Ewald*" is rejected, as plaintiff "has not actually or constructively received" the money placed in escrow) *and Bais Yaakov of Spring Valley v. Graduation Source, LLC,* —— F. Supp. 3d ——, 2016 WL 872914, at *1 (S.D.N.Y. Mar. 7, 2016) ("Although Defendants sought to avail themselves of the hypothetical proposed in *Campbell–Ewald* by depositing the full amount of statutory damages into the Court's Finance Unit and assenting to the injunctive relief requested by Plaintiff in its Complaint, Plaintiff's individual claims remain live.").

This Court finds more persuasive those cases rejecting a defendant's attempt to invoke the hypothetical reserved in *Campbell-Ewald*. *See Fauley v. Royal Canin U.S.A., Inc.*, 143 F. Supp. 3d 763, 765 (N.D. Ill. 2016) (characterizing the alternative view as "inconsistent" with *Campbell-Ewald*). At bottom, *Campbell-Ewald* constitutes an admonishment that "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Campbell-Ewald Co.*, 136 S. Ct. at 672. Accordingly, it is inappropriate to enter judgment on a named plaintiff's individual claims, "over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification." *Chen*, 819 F.3d at 1147.

The Seventh Circuit has not yet specifically ruled upon the hypothetical reserved by the *Campbell-Ewald* majority. However, this Court's conclusion today comports with their previous guidance. In *Chapman v. First Index, Inc.*, the plaintiff brought a putative TCPA class action, and before a class had been certified, the defendant offered the plaintiff judgment for $3,002 (the full statutory damages), an injunction, and an award of costs. 796 F.3d 783 (7th Cir. 2015). The defendant's offer lapsed unaccepted, and the defendant then moved to dismiss the action as moot. *Id.* at 786. The district court granted the motion but the Seventh Circuit reversed, largely based on Justice Kagan's dissent in *Symczyk*. *Id.* at 786-87. The Court went on to reject the circular logic endemic to defendant's arguments regarding plaintiff's request for equitable relief:

> If an offer to satisfy all of the plaintiff's demands really moots a case, then it self-destructs. Rule 68 is captioned "Offer of Judgment." But a

district court cannot enter judgment in a moot case. All it can do is dismiss for lack of a case or controversy. So if the $3,002 offer made this case moot, then even if Chapman had accepted it the district court could not have ordered First Index to pay. It could have done nothing but dismiss the suit. *Likewise with First Index's offer to have the district court enter an injunction. As soon as the offer was made, the case would have gone up in smoke, and the court would have lost the power to enter the decree.* Yet no one thinks (or should think) that a defendant's offer to have the court enter a consent decree renders the litigation moot and thus prevents the injunction's entry.

*Id.* at 786–87 (emphasis added). This rationale applies with similar force in this case. Plaintiff here is seeking an injunction prohibiting UDIC from sending additional inappropriate faxes. Am. Compl. [32] at 9. If this case had really been rendered moot by virtue of UDIC's tender of payment and concomitant offer to stop sending Plaintiff faxes, then this Court "would have lost the power to enter the [requested] decree." *Chapman*, 796 F.3d at 787. Plaintiff would therefore be denied part of the remedy he sought from the outset. That is not the law.

Defendant's motion to dismiss is inconsistent with the text, logic and purpose of *Campbell-Ewald*. That decision stands for the general proposition that plaintiffs, not defendants, are the masters of their complaints. Defendant's argument would allow a potential exception (identified in dicta) to swallow *Campbell-Ewald*'s fundamental rule, and it is accordingly rejected. Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction Under FRCP 12(b)(1) [323] is denied.

## B. Defendant's Motion to Add Affirmative Defenses

Defendant's Motion For Leave To File Eighth and Ninth Affirmative Defenses To The Amended Complaint requests permission to file affirmative defenses sounding in estoppel and waiver. [281] at 2-5. These defenses, however,

11

do not represent new substantive arguments; instead, Defendant's new affirmative defenses "essentially recast the Fifth Affirmative Defense (mootness) [which was timely pled], in terms of 'estoppel' and 'waiver,' respectively." [300] at 3; *see also* Def.'s Answer And Affirmative Defenses To Pl.'s Am. Class Action Compl. [34] at 10 ("This Court lacks subject matter jurisdiction over this litigation because all of Plaintiff's claims are moot.").

As a preliminary matter, the Court notes that Defendant has failed to meaningfully apply the requirements of FRCP 16(b)(4) (good cause required to amend operative Scheduling Order) or FRCP 15(a)(2) (factors implicated by a request for leave to amend pleadings). This failing is ultimately immaterial, however, given the Court's determination *supra* that Defendant's settlement offer and placement of select funds in escrow did not moot, waive or otherwise estop Plaintiff from bringing his claims. The Court's rejection of Defendant's argument stands regardless of the stylistic gloss Defendant chooses to apply. Accordingly, Defendant's Motion For Leave To File Eighth and Ninth Affirmative Defenses To The Amended Complaint [281] is denied as moot.

## C.    Plaintiff's Motion for Class Certification

Having determined that Plaintiff's TCPA claim can proceed, the Court turns to the question of class certification. Plaintiff seeks to certify the following class:

> All persons or entities who were successfully sent one or more faxes during the period from May 2007 through September 2008 that: (1) named "Humana Specialty Benefits" or "HumanaDental" on the bottom of the fax; (2) referred to, referenced, or discussed "HumanaDental" dental plans; (3) contained one of the following designations: FL-Fax 4/08, GN-Fax 4/08, NC-Fax 4/08, WV-Fax 4/08, AK-Fax 9/07, GN-Fax 9/07, KS-Fax 9/07, NC-Fax 9/07, TX-Fax

9/07, VA-Fax 9/07, CO/NM-Fax 10/07, GA-Fax 10/07, OK-Fax 10/07, IL/MS/LA/MN-Fax 12/07, KY-Fax 12/07, WV-Fax 12/07, MD-Fax 2/08, CA-Fax 2/08, NV-Fax 7/08; and (4) contained an "opt out" notice stating, "If you don't want us to contact you by fax, please call 1-800-U-CAN-ASK," or "If you don't want us to contact you by fax, please call 1-888-4-ASSIST."

[290] at 2. To certify the proposed class Plaintiff must satisfy, by a preponderance of the evidence, the enumerated elements of Rule 23(a) and one subsection of Rule 23(b). As explained below, Plaintiff's TCPA claim is amenable to class treatment, but the proposed class is too broad.

### 1.     Rule 23(a) Requirements

The four Rule 23(a) requirements are numerosity, commonality, typicality and adequacy of representation. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

### a)     Numerosity

The numerosity requirement of Rule 23(a)(1) is satisfied when the proposed class is so numerous that joinder of all members of the class is impracticable, such that "a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). Here, HDIC has stipulated that 25,232 faxes were transmitted error-free to the proposed class. [290] Ex. 21, ¶¶ 19-22. Of that number, 19,931 were transmissions of GN-Fax 4/08—identical to the Subject Faxes here. *Id.* at ¶ 20. Therefore, Rule 23(a)(1)'s numerosity requirement is satisfied.

### b)     Commonality

To meet the commonality requirement, Plaintiff must show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a

single common question of law or fact will do. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). While the Rule speaks of "questions," what matters for class certification is the capacity of a classwide proceeding to generate "common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores*, 131 S. Ct. at 2551 (emphasis in original and internal quotations omitted); *accord Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 436-38 (7th Cir. 2015). The "critical point" is "the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (emphasis in original and internal quotations omitted). Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff, no common answers are likely to be found. *Id.*

Here, a class action likely will generate common answers to at least three questions of fact and law, which are common to the proposed class and which will drive the resolution of this case:

> (1) Whether the Subject Faxes were "advertisements" within the meaning of the TCPA;
>
> (2) Whether HDIC was a "sender" of the Subject Faxes within the meaning of the TCPA; and
>
> (3) Whether HDIC's putative violations of the TCPA were performed "willfully or knowingly," such that the enhanced relief under the TCPA is implicated.

Defendant only grapples with the first common question. HDIC first acknowledges that the Court previously determined that whether the Subject Faxes amounted to "advertisements" was a disputed factual question. However, HDIC

suggests that the context in which each individual message was received will necessarily impact this factual determination, such that the first question is not susceptible to a common answer. Not necessarily so. As the Court originally explained, "a jury could find that the faxes" contain "a sales pitch," given "the precise information included in the fax." [189] at 17. This finding is not context dependent; rather, this determination requires a single application of the law to common facts, *i.e.*, the content of the messages in question.

Defendant's additional arguments regarding other ostensibly individual questions implicated by Plaintiff's proposed class are more properly considered as part of the Court's "superiority" analysis. In the end, Plaintiff has identified a number of common questions, and those same questions are amenable to common answers which will drive the resolution of this case. That is all Rule 23(a)(2) requires.

### c) **Typicality**[2]

To satisfy the typicality requirement, Plaintiff must establish a congruence between his claim and those of the unnamed class members sufficient to allow him to litigate on behalf of the group. Fed. R. Civ. P. 23(a)(3). Generally, a claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members," and it is based upon the same legal theory. *Oshana*, 472 F.3d at 514 (internal quotations omitted). Although there may be factual distinctions between the claims of the named representatives and those of

---

[2] Given our substantive rejection of Defendant's mootness argument *supra*, we similarly reject Defendant's argument that Plaintiff is atypical of the proposed class insofar as he is subject to a unique mootness defense not applicable to the class.

other class members, the former's claims must share the "same essential characteristics as the claims of the class at large." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009) (internal quotations omitted).

Plaintiff summarily concludes that because "HDIC acted consistently toward the entire class and all claims, including Plaintiff's, are based on the same legal theory," the "typicality requirement is satisfied." [290] at 30. Defendant alternatively argues that "plaintiff's claim is not typical of the potential claims of the recipients of faxes *other* than the one he has identified as having been received by his fax machine." [319] at 14. Defendant's position best reconciles governing precedent to the facts of this case.

Plaintiff's proposed class captures 18 other faxes which he never received. [290] at 2. This is not a marginal variation in the same course of conduct. There are simply no connections in this record between Plaintiff and these 18 other messages. Claims related to these 18 other messages do not share the "same essential characteristics" with Plaintiff's claims, as the subject messages have different content, were sent at different times, and were sent to different parties. *Muro,* 580 F.3d at 492. Indeed, most of these other faxes were not even the subject of discovery in this (long-running) litigation.

Plaintiff's proposed class is a bridge too far. His claims are typical of those held by other recipients of the Subject Faxes. However, Plaintiff's claims are not typical of the claims held by recipients of the other 18 messages that he never received.

### d)     Adequacy

To satisfy the adequacy requirement, Plaintiff must show that he will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In assessing adequacy, this Court must determine whether Plaintiff has: (1) antagonistic or conflicting claims with other members of the class; (2) a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) counsel who is competent, qualified, experienced and able to vigorously conduct the litigation. *See Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 613 (N.D. Ill. 2009).

Defendant's only argument on this point is that Plaintiff is not an adequate representative insofar as he is subject to a unique mootness defense. *See C.E. Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011) ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may . . . bring into question the adequacy of the named plaintiff's representation."). Here again, given the foregoing substantive rejection of Defendant's mootness defense, this point is unavailing.

The Court further finds based upon its own independent review that Plaintiff has satisfied his burden on this score. Plaintiff has demonstrated a sufficient interest in resolution of these claims by participating in discovery, he has no claims which are antagonistic to those of the class as a whole, and he has selected experienced and capable class counsel.

### 2. Rule 23(b)(3) Requirements

Here, Plaintiff moves to certify a class under Rule 23(b)(3), so he must show: (1) that issues common to the class members predominate over questions affecting only individual members; and (2) that a class action is superior to other available adjudication methods. *See Messner v. Northshore University HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

### a) Predominance

There "is no mathematical or mechanical test for evaluating predominance." *Messner*, 669 F.3d at 814. Ultimately, the predominance requirement tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement, although similar to questions of commonality and typicality, is more demanding than either of those Rule 23(a)(2) requirements. *Id.* at 623-24. The requirement "is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Stampley v. Altom Transport, Inc.*, No. 14-cv-3747, 2015 WL 5675095, at *6 (N.D. Ill. Sept. 24, 2015) (internal quotation omitted). Or, "to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlie the claims brought by the proposed class." *Id.* (internal quotation omitted).

Defendant identifies eight questions which purportedly require individual answers, such that common questions do not predominate. The first four of these are:

> (1) For every fax transmission, an investigation must be made into whether the party to whom it was sent is the fax machine's owner. If not, the owner must be identified because, under the law currently governing this case, owners of fax machines have standing.
>
> (2) For every fax transmission, an investigation must be made into whether persons other than the owner retrieved and read the fax and were annoyed, distracted and inconvenienced because, under the law currently governing this case, such persons may have a TCPA claim.
>
> (3) [F]or every person who retrieved and read the fax, and was "annoyed, distracted and inconvenienced," a determination must be made as to whether that person was in the "protected zone of interest" and whether the "annoyance, distraction and inconvenience" reached an actionable level.
>
> (4) For each owner and retriever/reader, a determination must be made as to whether that person was acting in his or her individual capacity, or on behalf of a corporate or other entity. A determination then must be made as to whether the person, individually, or the corporation is the proper party to assert the claim.

[319] at 21-22. These points are more accurately characterized as concerns regarding the "ascertainability" of the class. As a procedural matter, ascertainability is an element of the "superiority" inquiry, at least in this circuit. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). Moreover, as discussed *infra* pursuant to Court's superiority analysis, a plaintiff does not need to establish a reliable and administratively feasible way to identify all those who fall within the purported class at the class certification stage. *Id.* These concerns may

be valid, but they should be addressed through case management techniques, not summary denial of class certification. *Id.*

> (5) If two or more persons have a claim for the same fax, this Court has ruled that the $500 recovery must be allocated among them. Thus, for every fax transmission for which two or more persons have a claim, a determination must be made as to how to allocate that sum.

[319] at 22. This concern similarly puts the cart before the horse. It has "long been recognized that the need for individual damages determinations at [some later stage of] the litigation does not itself justify the denial of certification." *Mullins*, 795 F.3d at 664 (citing *Schleicher v. Wendt,* 618 F.3d 679, 685 (7th Cir. 2010) ("The possibility that individual hearings will be required for some plaintiffs to establish damages does not preclude certification.")). So long as HDIC is eventually "given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights are protected." *Id.* (internal citation omitted).

> (6) If HDIC's pending petition with the FCC is granted and HDIC is extended a waiver from the requirement of specific opt-out language on faxes sent with the permission of the recipient . . . for every fax transmitted, a determination will need to be made as to whether the recipient claims to have revoked the permission he extended in his agency contract with Humana companies (as plaintiff apparently contends he did in this case).

> (7) If the United States Court of Appeals for the District of Columbia Circuit rules in *Bais Yaakov of Spring Valley v. FCC* that opt-out language is not required on faxes sent with the permission of the recipient, then again whether or not the recipient consented to the fax will become pertinent. Then, for every fax transmitted, a determination will need to be made as to whether the recipient claims to have revoked the

permission he extended in his agency contract with Humana companies.

[319] at 23. Neither of these potential complications has come to pass, and such hypothetical concerns can be addressed through the case management process if and when they actually manifest.

> (8) If the United States Supreme Court rules in *Spokeo, Inc. v. Robins* that an injury in fact must be sustained for an individual to have a statutory claim under the Fair Credit Reporting Act, then, HDIC submits, that principle will apply to claims brought under the TCPA. Thus, for every fax transmitted, a determination will need to be made as to whether the owner sustained an injury in fact, or whether he did not sustain such an injury because he allowed others to use his machine. This Court also will need to determine whether retriever/readers were sufficiently annoyed, distracted, and inconvenienced to the extent they sustained an "injury in fact" sufficient to give them standing to pursue a TCPA claim.

[319] at 24. Defendant's concern here is misplaced, as *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), simply does not impact the Court's predominance analysis. To understand why necessitates a brief overview of that decision.

The plaintiff in *Spokeo* alleged that defendant had violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, by publishing information about him which was incorrect. *Id.* at 1544. Defendant claimed that because plaintiff had not suffered an "injury-in-fact," he lacked standing. *Id.* The Supreme Court initiated its analysis by reaffirming the principle that Article III's "injury-in-fact" standard requires a plaintiff to plead an injury which is both "particularized" and "concrete." *Id.* The Court affirmed the Ninth Circuit's conclusion that plaintiff had alleged a "particularized" injury by virtue of his allegation that defendant had reported

incorrect information about him specifically.  *Id.* at 1548 ("For an injury to be particularized, it must affect the plaintiff in a personal and individual way.") (internal quotation omitted).

The Court found, however, that the Ninth Circuit had not adequately addressed the question of whether plaintiff's injury was "concrete."  *Id.* at 1548. The Supreme Court further explained that to be "concrete" an injury must be "real" and not "abstract."  *Id.*  While "tangible injuries are perhaps easier to recognize . . . intangible injuries can nevertheless be concrete."  *Id.* at 1549.  In determining whether an intangible injury is concrete, the Court identified two factors: (1) whether in "historical practice" the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" and (2) the "judgment" of Congress, since "Congress is well positioned to identify intangible harms that meet minimum Article III requirements."  *Id.* at 1549.  In the FRCA context specifically, the Court held that "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk."  *Id.* at 1550.

*Spokeo*'s particular guidance on Article III standing has limited impact on this case.  Here, Plaintiff and each member of the as-modified class received the same fax and was ostensibly injured thereby.  Their allegations flow from their individual receipt of the fax, and they have accordingly alleged a sufficiently "particularized" injury.

Plaintiff's injuries (and those of the putative class) are also "concrete." As a preliminary matter, the alleged injuries are tangible. Plaintiff alleges that the Subject Faxes occupied his fax line and machine, used his toner and paper, and wasted his time. Am. Compl. [32] ¶30. The Seventh Circuit has previously recognized that injuries of this sort confer standing. *See Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 491 (7th Cir. 2014); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

The same result obtains when Plaintiff's ostensible injuries are analyzed under the "intangible" rubric. A claim under the TCPA for unwanted fax messages has a basis in "historical practice" insofar as it is roughly analogous to a claim at common law for conversion. *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (plaintiff's factual allegations regarding unwanted faxes sufficient to make out claim for both TCPA violation and common law conversion). The consideration regarding Congressional judgment similarly suggests that Plaintiff's injuries are concrete. After all, Congress enacted the TCPA's restrictions on unwanted faxes "to protect citizens from the loss of the use of their fax machines during the transmission of fax data." *Id.*

In short, the concerns identified by Defendant are largely abstract, immaterial, or better addressed by prudent case management. On the other hand, class treatment will provide common answers to questions that are universally faced by putative class members. *See supra* at 14. Accordingly, these common questions predominate over any individual issues.

**b)    Superiority**

The superiority requirement under Rule 23(b)(3) requires Plaintiff to show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  A class action is superior when, as here, "the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Systems Corp.,* 319 F.3d 910, 911 (7th Cir. 2003).

Defendant's primary argument regarding superiority is that identification and administration of the class would be difficult.  As mentioned *supra*, Defendant's concerns regarding ascertainability are misplaced.  Under binding Seventh Circuit precedent, the Court is compelled to address these administrative concerns through case management techniques.  *See Mullins*, 795 F.3d at 664.  As a practical matter, this particular administrative concern is also mitigated by the fact that discovery has yielded a list of all the fax numbers which received messages designated GN-Fax 4/08, like the Subject Faxes here.  [285] Ex. 21, ¶ 20.  This spreadsheet should substantially reduce the administrative burden on the parties, and if that burden nevertheless proves too cumbersome in practice, the Court is free to fashion remedial procedures in the future.

The administrative burden here also pales in comparison to the potential benefits.  Indeed, class treatment is routinely recognized as the superior method of adjudicating mass TCPA violations, for the obvious reason that many TCPA

plaintiffs are unlikely to pursue their claims on an individual basis. *See Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014) ("Congress expressly created the TCPA as a 'bounty' statute to increase the incentives for private plaintiffs to enforce the law."); *see also Mullins*, 795 F.3d at 664 (in many cases in which the class composition is difficult to ascertain "there is realistically no other alternative to class treatment"); 7A Charles Alan Wright *et al.*, *Federal Prac. & Proc.* § 1780 (3d ed. 2005) ("If judicial management of a class action, no matter what its dimensions may be, will reap the rewards of efficiency and economy for the entire system . . . then the individual judge should undertake the task. Ironically, those Rule 23(b)(3) actions requiring the most management may yield the greatest pay-off in terms of effective dispute resolution.").

Plaintiff's case is the quintessential dispute that will, as a practical matter, proceed only if it receives class treatment. Resolving these claims via class treatment is superior to not addressing the claims at all because of potential administrative difficulties. *See Mullins*, 795 F.3d at 663 (reiterating that our superiority inquiry is "comparative"). The Court accordingly finds that the superiority requirement has been satisfied.

### 3. The Composition Of The Class

Having concluded that Plaintiff's TCPA claim is amenable to class treatment, the Court must resolve two additional questions that impact the final parameters of the class.

### a)     The New Agency Contracts

Defendant argues that if a class is certified, it must necessarily be defined to exclude those agents and agencies that received amended agency contracts in the summer of 2015. [319] Ex. A. These contracts became effective on either August 1, 2015, or 30 days after the date the agent was provided notice of the new agency contracts, whichever was later. *Id.* The contracts contained, *inter alia*, an arbitration clause, a class action waiver, and consent to receive "advertisements," as that term is used in the TCPA. *Id.* These amended agency agreements were issued long after this case was filed, but Defendant nevertheless failed to inform the recipients that they were potential plaintiffs in a pending action. *Id.* Defendant's attempt to subvert the integrity of the class certification process is not well taken.

The Supreme Court has long recognized that because "of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). As Plaintiff correctly notes, courts have repeatedly used this authority to bar or invalidate class action waivers and arbitration clauses procured from potential class members who were not provided adequate notice of the pending action. *See, e.g.*, *Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (court invalidated an arbitration agreement sent to putative class members and required defendant to send out a corrective notice); *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) (communication of an arbitration

agreement to putative class members held misleading where defendant omitted the "critical information," including that there was ongoing litigation and that "by failing to reject the arbitration clause, they were forfeiting their rights as potential plaintiffs").

At bottom, the agencies and agents that executed these agreements did not (and could not) have understood that they might be forfeiting their ability to participate in this case, because HDIC did not inform them of the pending collective action. HDIC's oversight is particularly troubling given the long pendency of this case and the tenacity with which it has been litigated. The Court rejects Defendant's attempt to use such agreements to bar potential plaintiffs from the class, at least for the purposes of this preliminary certification decision. This conclusion, like all findings at the preliminary certification stage, is subject to appropriate revision as needed.

> **b)** **Only Those Who Were Also Sent The Subject Faxes**

As explained *supra*, Plaintiff only received the Subject Faxes, which were designated GN-Fax 4/08. Plaintiff nevertheless seeks to certify a class containing recipients of 18 other messages he did not receive. This is untenable. Plaintiff's claims are not "typical" of claims held by recipients of messages he never saw. This litigation is also not the superior method of adjudicating claims concerning messages never received by Plaintiff. Accordingly, the class certified today will be defined via reference to the GN-Fax 4/08 only.

## IV.    Conclusion

Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction Under FRCP 12(b)(1) [323] is denied.  Defendant's Motion For Leave To File Eighth and Ninth Affirmative Defenses [281] is denied as moot.  Plaintiff's Motion For Class Certification [290] is granted in part and denied in part.

This Court certifies the following class:

> All persons or entities who were successfully sent one or more faxes during the period from May 2007 through September 2008 that: (1) named "Humana Specialty Benefits" or "HumanaDental" on the bottom of the fax; (2) referred to, referenced, or discussed "HumanaDental" dental plans; (3) contained the following designation-GN-Fax 4/08; and (4) contained an "opt out" notice stating, "If you don't want us to contact you by fax, please call 1-800-U-CAN-ASK," or "If you don't want us to contact you by fax, please call 1-888-4-ASSIST."

The Court designates Plaintiff Lawrence S. Brodsky as the class representative.  The Court appoints Brian J. Wanca of Anderson + Wanca and Phillip A. Bock of Bock & Hatch, LLC as class counsel.

Dated: September 29, 2016                          Entered:


_____
John Robert Blakey
United States District Judge