## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| LAWRENCE S. BRODSKY, individually and as the representative of a class of similarly-situated persons, | |
| Plaintiff, | Case No. 10-cv-03233 |
| v. | Judge John Robert Blakey |
| HUMANADENTAL INSURANCE COMPANY d/b/a HUMANA SPECIALITY BENEFITS, | |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Lawrence Brodsky (Plaintiff or Brodsky) claims that Defendant HumanaDental Insurance Company (Defendant or HDIC) improperly sent him two faxes in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.* This Court previously certified a class of similarly-situated recipients in September 2016. [349] at 28.

Currently pending before the Court are Defendant's Motion to Decertify the Class and To Stay [365] and Plaintiff's Motion For Order Approving Class Notice and Setting A Date For Opt Outs. [371] at 1-4. As explained below, Defendant's motion is granted, and Plaintiff's motion is denied as moot.

1

## I.    Background

A brief overview of the TCPA, the facts, and this case's procedural posture is provided below.  This discussion is not exhaustive, and this Court incorporates by reference as needed, and presumes familiarity with, both Judge Thomas Durkin's opinion regarding HDIC's previous motion for summary judgment [189] and this Court's opinion regarding class certification.  *See generally* [349].

### A.    The Solicited Fax Rule

The TCPA provides that a "person or entity" may bring an "action based on a violation of this [statute] or the regulations prescribed under" the same.  47 U.S.C. § 227(b)(3).  The statute itself generally prohibits sending an "unsolicited advertisement" via fax.  *Id.* § 227(b)(1)(C).  A fax is "unsolicited" if the recipient has not given its "prior express invitation or permission" to receive the fax.  *Id.* § 227(a)(5).

The statute also provides select exceptions to this general ban by permitting the sending of unsolicited faxes if, among other things, the fax contains an "opt-out notice" meeting various statutory requirements.  *Id.* § 227(b)(1)(C)(i)-(iii).  To be clear, the TCPA only imposes an opt-out notice requirement for "unsolicited" fax advertisements; it does not address solicited fax advertisements.

The Federal Communications Commission (FCC), pursuant to its authority to "prescribe regulations to implement the requirements of" the TCPA, *id.* § 227(b)(2), altered this landscape in 2006 by promulgating the "Solicited Fax Rule," codified at 47 C.F.R. § 64.1200(a)(4)(iv).  Under the Solicited Fax Rule, both unsolicited *and*

2

*solicited* faxes must include the opt-out notice described in the TCPA. *See id.* ("A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section."); *see also Bais Yaakov of Spring Valley, et al. v. FCC, et al.*, 852 F.3d 1078, 1083 (D.C. Cir. 2017) ("The Solicited Fax Rule requires a sender of a fax advertisement to include an opt-out notice on the advertisement, even when the advertisement is sent to a recipient from whom the sender obtained permission. In other words, the FCC's new rule mandates that senders of *solicited* faxes comply with a statutory requirement that applies only to senders of *unsolicited* faxes.") (internal citation omitted); *Nack v. Walburg*, 715 F.3d 680, 685 (8th Cir. 2013) ("Setting aside any concerns regarding the validity of [the Solicited Fax Rule] or the scope of the private right of action, we believe that the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax.").

### B.    Factual Context[1]

Plaintiff Brodsky is a "wholesaler of insurance" who does business as a sole proprietorship known as the Lawrence S. Brodsky Agency, Inc. (LSB Agency). Defendant HDIC is a Wisconsin corporation that insures certain dental plans, including the HumanaDental Prevention Plus plan, the HumanaDental PPO, and Traditional Preferred Plans. "Humana Specialty Benefits," a group within Humana

---

[1] Unless otherwise indicated, these facts are taken from Judge Durkin's earlier ruling. *See generally* [189].

Inc., markets "specialty products," including dental, vision, life insurance and disability products.

Brodsky and the LSB Agency have "market agreements" with numerous insurance companies. Brodsky then sells those insurance companies' products through various insurance agents/independent contractors. One of Brodsky's market agreements was with "Humana Insurance Company, Humana Health Plan, Inc., and all of their affiliates." That agreement is known as a "Group Producing Agent or Agency Contract." This Agency Contract stipulated that Brodsky and the LSB Agency agreed that Humana Insurance Co. and all of its affiliates "may choose to communicate with [Brodsky and/or the LSB Agency] through the use of . . . facsimile to the . . . facsimile numbers of" Brodsky and the LSB Agency. In connection with his Agency Contract, Brodsky provided Humana Insurance Co. with the facsimile number of (847) 991-0152.

On May 14, 2008, Brodsky's fax machine assigned to the number of (847) 991-0152 received two identical one-page fax messages (the Subject Faxes). The bottom of the Subject Faxes indicated that they were sent by "Humana Specialty Benefits." There is no dispute that the Subject Faxes were created by the Marketing Department of Humana Inc., and received the internal designation GN-Fax 4/08. The Subject Faxes do not identify the individual or entity to which they were specifically sent. At least seven of Brodsky's insurance agents/independent contractors had permission to use (and did in fact use) Brodsky's office space and fax machine during the time period at issue. The parties have stipulated that faxes

4

identical to the Subject Faxes (similarly designated GN-Fax 4/08) were successfully transmitted 19,931 times. [285] Ex. 21, ¶ 20.

## C. Procedural Posture

In its first motion for summary judgment, HDIC argued that it did not "send" the Subject Faxes, the Subject Faxes were not "sent" to Plaintiff, the Subject Faxes were not "advertisements," and Plaintiff had consented to delivery of the Subject Faxes. [118] at 1-5. Defendant's motion for summary judgment was denied as to Plaintiff's TCPA claim. [189] at 12-23. HDIC moved for reconsideration of that ruling [199], which was also denied. [212] at 3-9. In the course of ruling on both HDIC's motion for summary judgment and motion for reconsideration, Judge Durkin ultimately determined, among other things, that:

> (1) Whether the Subject Faxes were "advertisements" within the meaning of the TCPA is a disputed factual question, [189] at 16-18;

> (2) Whether HDIC was a "sender" of the Subject Faxes within the meaning of the TCPA is a disputed factual question, *id.* at 13-16;

> (3) The opt-out notices on the Subject Faxes were deficient as a matter of law under the Solicited Fax Rule, thereby precluding Defendant from raising defenses sounding in solicitation or "established business relationship," *id.* at 21-23 (citing *Nack*, 715 F.3d at 685); and

> (4) Brodsky had standing to pursue a TCPA claim based upon the Subject Faxes, even if they were intended for independent contractors with whom he associated, as "it makes no difference to whom the [Subject Faxes were] sent," [212] at 9, "since the issue of consent is removed from the equation" by the Solicited Fax Rule.

In September 2016, this Court also granted in part and denied in part Plaintiff's Motion for Class Certification. [290] at 1-3. The Court ultimately certified the following class:

> All persons or entities who were successfully sent one or more faxes during the period from May 2007 through September 2008 that: (1) named "Humana Specialty Benefits" or "HumanaDental" on the bottom of the fax; (2) referred to, referenced, or discussed "HumanaDental" dental plans; (3) contained the following designation- GN-Fax 4/08; and (4) contained an "opt out" notice stating, "If you don't want us to contact you by fax, please call 1-800-U-CAN-ASK," or "If you don't want us to contact you by fax, please call 1-888-4-ASSIST."

[349] at 28.

### D.    Recent Developments

In the wake of Judge Durkin's decision on summary judgment and this Court's certification of the instant class [349], the Solicited Fax Rule has been narrowed on multiple fronts.

### 1.    The November 2016 Waiver

On October 30, 2014, the FCC granted certain non-party petitioners retroactive waivers of the Solicited Fax Rule, in light of inconsistencies between the Solicited Fax Rule and other FCC guidance. *See* Order, 29 FCC Rcd. 13,998 ¶¶ 22-28 (Oct. 30, 2014) (the October 2014 Order). The FCC also explicitly invited "similarly situated" parties to apply for other retroactive waivers. *Id.* at ¶ 2. HDIC took up the FCC's invitation and applied for a retroactive waiver, which was pending at the time the Court considered Plaintiff's motion for class certification. [349] at 20-21.

In its briefing on class certification Defendant argued that the existence of the pending waiver application meant that class questions did not "predominate" in this case. [319] at 29 ("If HDIC's pending petition with the FCC is granted and

6

HDIC is extended a waiver from the requirement of specific opt-out language on faxes sent with the permission of the recipient, then whether or not the recipient consented to the fax will become a highly relevant issue in this litigation. In that event, for every fax transmitted, a determination will need to be made as to whether the recipient claims to have revoked the permission he extended in his agency contract with Humana companies."). The Court rejected this argument as premature, noting that Defendant had simply filed a waiver application, and, if the waiver was actually granted, the Court could address Defendant's "hypothetical concerns" as part of "the case management process." [349] at 21.

Later, in November 2016, HDIC received a retroactive waiver from the FCC. *See* [366-2], Order, 31 FCC Rcd. 11,943 ¶¶ 1-25 (Nov. 2, 2016) (November 2016 Waiver). The November 2016 Waiver explicitly excused Defendant for any failure "to comply with the opt-out notice requirement for fax advertisements sent with the prior express invitation or permission of the recipient prior to April 30, 2015." *Id.*

## 2. *Bais Yaakov*

After the October 2014 Order was issued, several non-party fax senders filed petitions for review of the FCC's decision in multiple circuit courts. The United States Judicial Panel on Multidistrict Litigation consolidated these petitions in the District of Columbia Circuit. *See Bais Yaakov v. FCC*, No. 12-1234, Dkt. Entry 124 (D.C. Cir. Nov. 13, 2014).

In March 2017, a split panel of the D.C. Circuit struck down the Solicited Fax Rule, holding it "unlawful to the extent that it requires opt-out notices on

solicited faxes." *Bais Yaakov v. FCC*, 852 F.3d at 1083. The majority found that the TCPA's text reached only *unsolicited* fax advertisements, such that the FCC lacked the authority to promulgate a rule governing *solicited* faxes. *Id.*

## II.    Legal Standard

Under Federal Rule of Civil Procedure 23(c)(1)(C), an "order that grants or denies class certification may be altered or amended before final judgment." Even "after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). That said, "in the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent, courts should not condone a series of rearguments on the class issues by the opponent of the class." *Parish v. Sheriff of Cook Cty.*, No. 07 C 4369, 2016 WL 1270400, at *1 (N.D. Ill. Mar. 31, 2016) (internal quotation marks omitted); *see also Pope v. Harvard Bancshares, Inc.* 240 F.R.D. 383, 387 (N.D. Ill. 2006) ("Even if the court grants a motion for class certification, that ruling is inherently tentative, and the court retains the freedom to modify it in light of subsequent developments in the litigation.").

## III.    Analysis

Defendant contends that both the November 2016 Waiver and the *Bais Yaakov* decision implicate additional individual questions that defeat superiority and predominance, such that the present class must be decertified. *See* [349] at 18 (explaining that to certify a class under Rule 23(b)(3), Plaintiff must show, among

other things: (1) that issues common to the class members predominate over questions affecting only individual members; and (2) that a class action is superior to other available adjudication methods). The Court addresses the November 2016 Waiver first, for reasons that will become apparent.

## A. The November 2016 Waiver

Defendant's argument regarding the November 2016 Waiver is straightforward. HDIC essentially contends that: (1) the requirement that *solicited* faxes include an opt-out notice is imposed by the Solicited Fax Rule (not the TCPA itself); (2) the November 2016 Waiver suspended the Solicited Fax Rule with respect to the faxes at issue here; (3) absent the Solicited Fax Rule, the faxes at issue did not need to include an opt-out notice, so long as they were solicited; and (4) to ascertain liability therefore, this Court must now determine whether each individual recipient "solicited" the faxes they received, such that individual questions overwhelm the common issues previously identified by the Court. *See generally* [366]. Plaintiff raises several objections to this analysis, which the Court will address in turn.

### a) The Effect of the Agency Contract

Plaintiff first claims that "[e]ven if" the November 2016 Waiver "has the effect" Defendant claims, the question of whether the faxes at issue were "solicited" is a common question of law subject to class-wide resolution. [375] at 4. Plaintiff essentially contends that since Defendant's ostensible permission to send the

Subject Faxes came in the form of standard Agency Contracts, the Court can decide, on a class-wide basis, whether the operative language of the Agency Contracts actually rendered the faxes "solicited" for the purposes of the TCPA. *Id.*

Courts "determine whether issues of individualized consent defeat commonality and predominance" in TCPA cases "on a case-by-case basis after evaluating the specific evidence available to prove consent." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, No. 12-cv-5105, 2016 WL 5390952, at *8 (N.D. Ill. Sept. 26, 2016). Where Defendants set forth "specific evidence showing that a significant percentage of the putative class consented" to the communication at issue, "courts have found that issues of individualized consent predominate [over] any common questions of law or fact." *Id.* at *10. Critically, the FCC has also cautioned that the "scope of consent must be determined upon the facts of each situation." Order, 30 FCC Rcd. 7961 ¶ 49 (July 10, 2015).

Given the "specific evidence available to prove consent" adduced by Defendant, the Court concludes that "issues of individualized consent" predominate here. Plaintiff's suggestion that the Court could determine whether consent was granted on a class-wide basis by simply reading the Agency Contracts is inconsistent with both the record and governing precedent. As a doctrinal matter, consent is "dependent on the context in which it is given." *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *3 (N.D. Ill. July 7, 2014). Indeed, the facts of this case underscore why context is so important. For example: (1) a substantial portion of the certified class was never party to an Agency Contract; (2) select class

10

members may have revoked their consent, even after entering into an Agency Contract; and (3) the "scope" of a particular consent in an Agency Contract might not extend to other "affiliated" class members offering insurance at the same location.

This last difficulty is especially thorny, as illustrated by Brodsky's own situation. He was party to an Agency Contract, but at least seven other individuals had his permission to use his fax machine during the time period at issue. Were these individuals Brodsky's employees or independent contractors? If they were independent contractors, was the putative consent in Brodsky's Agency Contract effective as to them? If the consent in the Agency Contract was effective as to these individuals, was it ever revoked? These outstanding questions suggest that "the trial in this case will be consumed and overwhelmed by testimony from each individual class member," in an effort "to determine whether the class member consented to receive the [messages] in question." *Legg & Lozano v. PTZ Ins. Agency, Ltd.*, *et al.*, No. 14-cv-10043, 2017 WL 3531564, at *5 (N.D. Ill. Aug. 15, 2017).

### b)      The FCC's Authority

Plaintiff next argues that, while the November 2016 Waiver may insulate Defendant from an administrative enforcement action with the FCC, it "has no effect in a private TCPA action" in federal court. [375] at 7. In support of this contention, Plaintiff invokes *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482 (W.D. Mich. 2014).

11

Plaintiff's reliance upon *Stryker* is misplaced. For one thing, no waiver had actually been issued to the defendant in *Stryker*, so its specific discussion of the issue constitutes dicta. *Id.* at 498. This Court is also not convinced that *Stryker's* analysis of the waiver issue is doctrinally sound. For example, *Stryker* summarily concludes that, even if a waiver had been issued, the Solicited Fax Rule would remain "in effect just as it was originally promulgated." *Id.* Not exactly. When the Solicited Fax Rule was "originally promulgated," it extended the TCPA's opt-out notice requirement to solicited faxes, including the Subject Faxes here. *See supra* at 2-3. The FCC subsequently issued the November 2016 Waiver, which narrowed the Solicited Fax Rule by, among other things, rendering it inapplicable to the Subject Faxes. *Id.* at 4. Thus, it is inaccurate to say that the Solicited Fax Rule "remain[ed] in effect just as it was originally promulgated" after the November 2016 Waiver. *Stryker*, 65 F. Supp. 3d at 498. The Solicited Fax Rule "remained in effect" after the November 2016 Waiver, but the former was now subject to the latter's interpretative contraction.

And make no mistake, the November 2016 Waiver is interpretative in nature. In the FCC's own words, by granting the November 2016 Waiver, the Commission was "interpreting and implementing a statute, the TCPA, over which Congress provided the Commission authority as the expert agency." November 2016 Waiver ¶ 12.

*Stryker* also rejects this proposition, suggesting that, to the extent the FCC's potential waiver is couched as a matter of regulatory interpretation, the waiver

represents a "fundamental violation of the separation of powers." *Stryker*, 65 F. Supp. 3d at 498. Such a concern is misplaced here. On the contrary, the November 2016 Waiver is a product of the reciprocal give-and-take at the heart of our constitutional framework: Congress enacted the TCPA, which created a private right for violations of "regulations prescribed under" the same, 47 U.S.C. § 227(b)(3); the FCC, in the November 2016 Waiver, narrowed the scope of one such regulation; and this Court's analysis is now informed by that Commission's interpretative guidance, consistent with Congress's delegation in § 227(b)(3).

*Stryker* is also called into question by a number of authorities cited by Defendant. *See generally* [366] (citing *Town & Country Jewelers, LLC v. Meadowbrook Ins. Group, Inc.*, No. 15-cv-2519, 2016 WL 3647321, at *2 (D.N.J. July 6, 2016); *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, 14-cv-3232, 2016 WL 1271693 (S.D.N.Y. Mar. 29, 2016); and *Simon v. Healthways, Inc.*, No. 14-cv-08022, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015)). Of these, *Simon* is particularly instructive. Defendants in *Simon* also received a retroactive waiver from the FCC, which excused "Defendants from following the opt-out notice requirement for facsimile advertisements sent with prior express permission." 2015 WL 10015953, at *7. The plaintiff in *Simon* contended that the FCC's waiver was not controlling in light of *Stryker*, but this argument failed. The court determined that, contrary to "the 'separation of powers' argument raised in *Stryker*," the "FCC has the authority to grant such a retroactive waiver." *Id.*

*Simon*'s conclusion adheres to the text of the TCPA itself. The statute: (1) provides that the "Commission shall prescribe regulations" necessary to implement its requirements, 47 U.S.C. § 227(b)(2); and (2) creates a private right of action for violations of those same regulations. *Id.* § 227(b)(3). It would make little sense to vest the FCC with these responsibilities and simultaneously declare that the Commission was somehow precluded from narrowing its own earlier regulation. *See NCTA v. Brand X,* 545 U.S. 967, 983-84 (2005) ("[W]hether Congress has delegated to an agency the authority to interpret a statute does not depend on the order in which the judicial and administrative constructions occur . . . Instead, the agency may . . . choose a different construction [than the court], since the agency remains the authoritative interpreter (within the limits of reason) of such statutes."); *see also* 47 C.F.R. § 1.3 ("Any provision of the rules may be waived by the Commission on its own motion or on petition if good cause therefor is shown.").

*Simon* was also grounded in a recognition of the unique regulatory context at issue. The court noted that "the retroactive waiver is directly related to the FCC's regulation regarding solicited advertisements [the Solicited Fax Rule]; the plain language of the TCPA only requires opt-out notice on unsolicited advertisements." *Simon*, 2015 WL 10015953, at *7. Here again, the FCC, as the promulgator of the Solicited Fax Rule, was well within its rights to retroactively narrow that same regulation.

On balance, the Court is convinced that *Simon* and its progeny chart the proper path in this area. *See also Town & Country Jewelers, LLC*, 2016 WL

14

3647321, at *2 ("Meadowbrook's petition seeking a retroactive waiver was granted by the FCC on August 28, 2015; therefore, only unsolicited faxes would be prohibited in this action."); *Bais Yaakov v. Graduation Source*, 2016 WL 1271693, at *5 (The "Court is persuaded by the analysis undertaken in *Simon*. The Waiver does not, as Plaintiff contends, retroactively release Defendants from *statutory* liability. As stated previously, on its face the TCPA only prohibits the sending of unsolicited faxes. It is the FCC's regulation interpreting the TCPA that extends the protections of the statute to solicited faxes. Thus, it is within the FCC's authority to determine when and how to apply this regulation, and to waive it for good cause.").

The FCC was empowered to issue the November 2016 Waiver, and that document means what it says: Defendant is excused for any "failure to comply with the opt-out notice requirement for fax advertisements sent with the prior express invitation or permission of the recipient prior to April 30, 2015."

### c) Decertification Is Appropriate Here

Now that "the issue of consent" is back in "the equation" by virtue of the November 2016 Waiver, [212] at 9, the present class must be decertified. Here again, *Simon* applies. There, the court determined that because "the FCC has the authority to grant such a retroactive waiver," and the waiver only applied to "solicited advertisements," whether "the retroactive waiver applies to this case therefore necessarily depends upon whether Defendants transmitted the faxes with or without that person's prior express invitation or permission." *Simon*, 2015 WL 10015953, at *7. The court refused to "engage in hundreds of mini-trials to

15

determine whether a putative class member provided Defendants his or her or its prior express permission," and denied plaintiff's motion for class certification. *Id.*; *see also M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *9 (N.D. Ill. Jan. 25, 2011) ("[T]he Court would have to conduct a series of mini-trials to determine the facts of prior business relationships and consent. It would have to do so both to establish the population of the class, and to determine liability. Given the evidence put forward by Plaintiff, the Court cannot conclude that the proposed class meets the predominance condition.").

The risk of lengthy mini-trials regarding consent is similarly acute here. As discussed *supra*, any collective proceeding in this case would need to resolve complicated individualized questions. These inquiries would also be protracted by virtue of the different relationships between and among the various recipients, as illustrated by Brodsky's own arrangement with his seven employees and/or independent contractors. These idiosyncratic consent issues defeat superiority and predominance, such that decertification is appropriate.

### 2. *Bais Yaakov*

As mentioned *supra*, the D.C. Circuit's decision in *Bais Yaakov* purported to strike down the Solicited Fax Rule wholesale, holding it "unlawful to the extent that it requires opt-out notices on solicited faxes." *Bais Yaakov v. FCC*, 852 F.3d at 1083. The parties disagree as to *Bais Yaakov*'s import for this case.

Defendant suggests that, like the November 2016 Waiver, *Bais Yaakov* invalidates the Solicited Fax Rule, meaning that the faxes here were only unlawful

if they were unsolicited, which in turn implicates myriad individual issues that defeat certification. Plaintiff predictably disagrees, arguing, among other things, that *Bais Yaakov* is inconsistent with the Seventh Circuit's guidance in *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013).

The Court declines to venture too far into this dispute, given the determination above that decertification is warranted in light of the November 2016 Waiver. Nevertheless, since Plaintiff's argument regarding *Turza* seemingly has ramifications for that analysis, the Court will address the dispute in part here.

*Turza* was an unremarkable case—the "only question on the merits" was "whether the faxes [at issue] contained ads." 728 F.3d at 685. To resolve that issue, the Seventh Circuit looked to the faxes themselves and guidance promulgated by the FCC. *See id.* at 687 (citing 47 C.F.R. § 64.1200(f)(1)). The Seventh Circuit ultimately affirmed the district court's finding on the merits, but remanded the matter for additional case management proceedings. *Id.* at 690.

Making the most of a fairly limited opinion, Plaintiff's employs *Turza* in several ways. In certain briefs, Plaintiff contends that under *Turza*, the Solicited Fax Rule remains in effect in the Seventh Circuit, such that individual consent issues are irrelevant. [397] at 4 ("Plaintiff is relying on the FCC regulation, [the Solicited Fax Rule], which was issued in the 2006 Order, along with the Seventh Circuit's decision in *Turza*."). To the extent this is Plaintiff's argument, this Court disagrees. *Turza* did not feature a retroactive waiver from the FCC that narrowed

17

the Solicited Fax Rule, so even assuming for the sake of argument that it remains good law after *Bais Yaakov*, it has limited import here.

At other points, Plaintiff seems to suggest that under *Turza*, the TCPA itself extends the opt-out notice requirement to solicited faxes, irrespective of the Solicited Fax Rule. *See* [397] at 2 (The "law in this Circuit under [*Turza*] is that compliant opt-out notice is required for all fax advertisements, regardless whether sent pursuant to an [established business relationship] or with prior express permission."); [387] at 2 (In *Turza*, "also a TCPA junk fax case, the Seventh Circuit held that opt-out notice is required for faxes sent . . . with permission."). This broad reading of *Turza* is not the law.

It is true that *Turza* cites the TCPA, rather than the Solicited Fax Rule, in support of the proposition that opt-out notices are required on solicited faxes. 728 F.3d at 683 ("Even when the Act permits fax ads—as it does to persons who have consented to receive them, or to those who have established business relations with the sender—the fax must tell the recipient how to stop receiving future messages.") (citing 47 U.S.C. § 227(b)(1)(C)(iii), (2)(D)). The absence of a specific cite to the Solicited Fax Rule itself cannot be read out of context. The portions of the TCPA cited at this point in *Turza* never mention solicited messages at all; instead, they refer to the FCC's ability to promulgate additional rules regarding opt-out notices (such as the Solicited Fax Rule). *See* 47 U.S.C. § 227(b)(1)(C)(iii) ("It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to use any telephone facsimile

18

machine, computer, or other device to send, to a telephone facsimile machine, an *unsolicited* advertisement, unless the *unsolicited* advertisement contains a notice meeting the requirements under paragraph (2)(D).") (emphasis added); *id.* § 227(2)(D) ("The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission shall provide that a notice contained in an *unsolicited* advertisement complies with the requirements under this subparagraph only if— the notice is clear . . . .") (emphasis added).

Moreover, the selection from *Turza* that Plaintiff invokes was not necessary to the Seventh Circuit's decision, nor does that selection explain the court's rationale. Thus, even if this Court were to adopt Plaintiff's interpretation of *Turza* (which it does not), the portion relied upon constitutes nonbinding dicta. *See U.S. v. Crawley,* 837 F.2d 291, 292 (7th Cir. 1988) ("[D]ictum is not authoritative. It is the part of an opinion that a later court, even if it is an inferior court, is free to reject.); *see also* Michael C. Dorf, *Dicta and Article III*, 142 U. Pa. L. Rev. 1997, 2000-01 (1994) ("Dicta are less carefully considered than holdings, and, therefore, less likely to be accurate statements of law. [Additionally] dicta have no precedential effect because courts have legitimate authority only to decide cases, not to make law in the abstract.").

This Court declines to afford *Turza*'s non-precedential dicta a reading that would improperly expand the TCPA. Indeed, federal courts across the country agree that, while "the [TCPA] requires an opt-out notice on unsolicited fax

advertisements, the [TCPA] does not require a similar opt-out notice on *solicited* fax advertisements—that is, those fax advertisements sent with the recipient's prior express invitation or permission." *Bais Yaakov v. FCC*, 852 F.3d at 1081; *see also Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 464 (6th Cir. 2017) ("Concerned by this specter of crushing liability, businesses (and courts) began to question whether the FCC possessed the authority to promulgate the Solicited Fax Rule given that the text of the TCPA appeared to reach only unsolicited faxes."); *Nack*, 715 F.3d at 683 ("The statute itself does not expressly impose similar limitations or requirements [like the opt-out notice] on the sending of solicited or consented-to fax advertisements."); *Simon*, 2015 WL 10015953, at *7 ("[T]he plain language of the TCPA only requires opt-out notice on unsolicited advertisements."); *Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, No. 3:12-CV-1208 SRU, 2014 WL 518992, at *1 (D. Conn. Feb. 3, 2014) ("[A]lthough the TCPA itself appears to apply only to unsolicited fax advertisements, the FCC has adopted a regulation that appears to expand the TCPA's opt-out notice requirement to solicited faxes as well.") (emphasis and internal quotation marks omitted).

In addition to running contrary to this precedent, Plaintiff's argument is in tension with: (1) the TCPA's plain (and thus controlling) text, *see generally* 47 U.S.C. § 227 *et seq.*; and (2) guidance from the FCC, which implicitly presumes that the opt-out notice requirement is imposed on solicited faxes solely by virtue of the Solicited Fax Rule—not the TCPA itself. *See, e.g.,* October 2014 Order ¶ 1 (citing to the Solicited Fax Rule, not the TCPA, in support of the proposition that "senders of

fax ads must include certain information on the fax that will allow consumers to opt out, even if they previously agreed to receive fax ads from such senders").

Clearly, the Seventh Circuit would not effect a sea change of this magnitude without additional comment. In the Seventh Circuit, as in the rest of the country, the TCPA itself does not require that opt-out notices be included on solicited faxes—notwithstanding a missing citation in *Turza*.[2]

## IV.  Conclusion

Plaintiff claims that Defendant's faxes did not comply with the TCPA's opt-out notice requirement. The TCPA, however, does not impose an opt-out notice requirement on "solicited" faxes. That obligation was created by the Solicited Fax Rule, which is no longer operable here by virtue of the November 2016 Waiver. Thus, to determine whether any putative member of the proposed class had a TCPA claim, the Court would first be required to determine whether that proposed class member "solicited" the faxes it received. In light of controlling precedent (which explains that this inquiry is context-dependent) and the facts here (which reflect different relationships among and between various recipients), the Court holds that individual consent issues defeat predominance and superiority, such that class treatment is no longer warranted under Rule 23.

---

[2] Two other courts in this judicial district have cited *Turza* for the proposition advanced by Plaintiff here. See *Orrington v. Scion Dental, Inc.*, No. 17-cv-00884, 2017 WL 2880900, at *2 (N.D. Ill. July 6, 2017); *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, --- F. Supp. 3d ---, 2017 WL 2406143, at *24 (N.D. Ill. June 2, 2017). To the extent these decisions suggest that the TCPA itself requires senders to include an opt-out notice on solicited fax messages, this Court respectfully disagrees.

Defendant's Motion to Decertify the Class and To Stay [365] is accordingly granted.  Plaintiff's Motion For Order Approving Class Notice and Setting A Date For Opt Outs [371] is denied as moot.


Date: August 28, 2017

Entered:

John Robert Blakey
United States District Judge